## Lessee of Samuel Mobley, Denton Mobley, William Mobley, Robert Cunningham and Margaret his wife, and Susannah Mobley *against* Christian Oeker.

*Improvement rights are equitable claims, which may be affected by the conduct of the improver's widow, during the minority of his children.*

*The 5th section of the limitation act of 26th March 1785, is binding on infants where there has been no possession of lands improved for seven years next before action brought.*

EJECTMENT for 214 acres on Clover creek, in Woodberry township.

The lessors of the plaintiff founded their pretensions on an improvement made by their father, Ezekiel Mobley, on lands adjoining. He settled on those lands in 1774 or 1775, erected a small house with a garden, cleared 15 or 20 acres, and begun 2 or 3 acres for meadow. He claimed the lands from Clover

creek, southerly to some marked trees between him and Michael Crydor, 363 perches distant. The good land extended easterly from the creek, about 125 perches to Tussey's mountain. He sold his claim to one tract, west of the creek; and also another tract north of his improvements, which fell back to him.

The settlers were driven off by the Indians in 1777, and Mobley among the rest. He went to Maryland and there died.

*201] *His widow returned to the lands in 1785, with her five children, the eldest about 15 and the youngest about 2 years old; and was assisted by her brother, William Philips, with corn and provisions. After some time she disposed of the tract north of the improvements which had fallen back to her husband, for the maintenance of the family; and being alarmed about their right to the tract whereon they lived, agreed in behalf of herself and family with her brother the said William Philips, that if he would secure to them 200 acres by an office right, he might have the residue for himself. She afterwards received a horse and cow as a further consideration for the improvement claim.

Philips accordingly took out warrants and obtained surveys of 200 acres in the name of Susannah Mobley, and 214 acres and 90 perches for himself, which he afterwards patented and sold to the defendant for a valuable consideration. No improvements whatever were made on the lands in dispute, until after the survey was made for Philips in 1793.

Before the parol evidence was gone into, the defendant's counsel objected, that the plaintiff was barred by the act of limitations of 26th March 1785, § 5, (2 Dall. Laws, 282,) there having been no quiet and peaceable possession of the premises within seven years next before bringing the action.

To this it was answered, that the widow had always been in the possession of the improved part of the lands, since the inhabitants returned to their settlements; and that if she was deprived of the possession of any part, it arose from the fraud or management of Philips, or her mistake in believing that an office right was indispensably necessary to hold the lands.

The court said, it was morally impossible to form any judgment, whether there had been an abandonment of the premises or not, so widely did the counsel differ in their statements, until the evidence was fully heard. The legal objection might afterwards be taken up and decided on.

The plaintiff's counsel then excepted to giving evidence of any contract or sale by the widow respecting the improvement claim. No act which she could do, could affect the rights of the children in their minority, in lands claimed by improvement, and ascertained on one side by a marked line; and for this was cited 2 Dall. 205. Duncan's lessee v. Walker.

[Mobley's Lessee *v.* Oeker.]

The court said, improvement rights were equitable claims *which might be fortified by the acts of a widow during the minority of her children, by pursuing and continuing [*202 the first settlement. So also might they be. abandoned and forfeited by her neglect. Evidence was equally applicable and relevant in both cases. It was impossible .to lay down any general rule on the subject. Every case must depend on its own peculiar circumstances. The effect of the evidence must be judged of, after it had been received.

After the evidence had been gone through, the court said, that they discovered nothing unfair or inequitable in the transaction of Philips with the widow. There were many years previous to 1791, when improvement rights were deemed to stand on a precarious footing. While this opinion generally prevailed, there was no impropriety in a widow's securing at least part of the land claimed. And in this instance, one of the adjoining tracts had been transferred by the improver in his life time, and two others had been disposed of by the widow after his death. The claim went to an unreasonable extent, and 200 acres had been secured to the family.

It was agreed by the court, and all the counsel, on the question being made, that the 5th section of the limitation act of 26th March 1785, extended to and was binding on infants, where there had been no possession of the lands held under the improvement, for seven years next before the action brought. The preceding section contains a proviso in favour of infancy, coverture, &c., but here it is only in favour of those who have been driven from their possessions by force or terror, &c. and the previous part of the law runs .thus :—"unless he, she or they, or "his; her or their ancestors or predecessors, have had the pos-"session," &c. The law is general in its nature, and binds every member of the community, "for the quieting of estates "and security of property." Vide Co. Lit. 246, a. Plowd. 364. Godb. 365. 9 Vin. Abr. 376.

The plaintiff suffered a nonsuit.

Messrs. Duncan and Walker, *pro quer.*

Messrs. Hamilton and Henderson, *pro def.*

Referred to as obsolete in 1 P. & W. 453.
Cited in 53 Pa. 385 in support of the proposition that a saving from the operation of a statute for disabilities must be expressed, or it does not exist.