## Miller *versus* Franciscus *et al.*

*Trust Estates, Limitation of Actions to Recover.—Rights of Minors under Acts of* 1785 *and* 1856 *relative to Actions for Real Estate.*

1. The Act of March 26th 1785, relative to "Limitation of Actions," is not repealed, but is modified by that of April 22d 1856, " for the greater certainty of title and more secure enjoyment of real estate."

2. A. purchased a lot of land in 1844, into possession of which her sister B. entered, claiming a resulting trust therein; at the date of the conveyance B. was a married woman, but by the death of her husband a few years later, became discovert. After the death of both A. and B., the son and heir at law of B., in 1859, one year after he attained his majority, brought ejectment for the lot of·land to enforce the alleged trust,upon the trial of which,the statute of 22d April 1856 was set up as a bar against his recovery.

*Held*, that the plaintiff was not barred of his action because the suit was not brought within the time limited in the 6th section of that act; for under the first section, the mother was entitled to thirty years after her right accrued within which to maintain her action for the recovery of the lot, and her son succeeding at her death to her rights, was entitled to his action at any time within thirty years from the time the right accrued to his mother.

3. Therefore, where the court charged in substance that the trust, if there was one, was a resulting trust, relating to realty, and created at the time of the conveyance in 1844 to A.; and that allowing seven years—the time given by the limiting clause and the proviso in the sixth section of the Act of 1856 —within which to enforce the trust, the time would expire in 1851; and as the ejectment was not brought until 1859, the act was a bar, it was error.

4. It was not material that the son, who was a minor until 1858, had brought his action within ten years after his own disability had ceased: for the limitation of the 6th section of the Act April 22d 1856, was inapplicable to persons under legal disabilities for whom another rule was provided within which the plaintiff had brought himself. The right of action having accrued to the mother at the death of her husband, the trust could have been enforced by her at any time within thirty years thereafter, or by her heir at law after her death.

5. Though B. was in possession under claim of title from the purchase until her death, which was before the passage of the Act of 1856, and had therefore no occasion to bring ejectment, she had nevertheless a right of action to compel her sister to convey the legal title she held in trust. After the passage of the act it would have been her duty, though her possession was undisturbed, to compel a conveyance or a written declaration of trust, which duty devolved upon her heir at her death, for the purpose of the statute was to superadd to the possession written evidence of the right of possession.

ERROR to the Common Pleas of *Northumberland county.*

This was an action of ejectment, brought in the Common

[*Miller v. Franciscus et al.*]

Pleas to April Term 1859, by David Lewis Miller against Edmund Franciscus, for half a lot of ground on the north side of Walnut street, in the borough of Milton. By leave of the court, on trial, Margaret Elizabeth Ernwine was added as co-defendant.

The case was this: The property in dispute belonged to Lewis Massey, whose agent, Moses Chamberlin, sold it to Harriet Summers, some time in April 1845, by deed dated December 31st 1844, for the sum of $300. The plaintiff is the son and sole heir of Hannah, a sister of Harriet Summers, who was married to James Miller. Miller and wife resided on the property in dispute prior to and at the time of the purchase by Harriet Summers, who was then residing with them as a member of their family.

Hannah Miller died some time in 1846, leaving her husband and two sons, viz., David Lewis and William, who remained on the property with Harriet Summers. William Miller, one of the sons, died, a few years after his mother, intestate, without issue, and unmarried. Harriet Summers died in 1848, leaving a will, in which she devised the lot and appurtenances to Margaret Elizabeth Riley, now intermarried with Daniel Ernwine, naming James Miller as executor. James Miller died in 1854, leaving his son David Lewis Miller of full age, who, in March 1859, brought this ejectment against Dr. Edmund Franciscus, who was then in possession as tenant of Mrs. Ernwine, and claimed to recover on the ground that, although the deed from Massey to Harriet Summers vested the legal title in her, the purchase was really made for his mother, Hannah Miller, and was paid for with her money, whereby a trust was created in law in favour of Mrs. Miller and her heirs.

On the trial, the defendant gave in evidence, under exception, the will of Harriet Summers, and the inventory of her estate, amounting to over $1600, to show her claim of title; that the plaintiff was a legatee and devisee in the will, and received what was bequeathed and devised to him, and also to show the amount of her personal property at the time of her death, which was the subject of the first and second errors assigned. After stating the leading facts of the case, the court below charged:—

"The defendant relies on an Act of Assembly passed the 22d of April 1856, as a bar to the plaintiff's recovery. This is a question of law for the court. All the facts are for you.

"The enactments are as follows: Section 4. That all declarations or creations of trust or confidence of any lands, tenements, or hereditaments, and all grants and assignments thereof, shall be manifested by writing, signed by the party holding the title thereof, or by his last will in writing, or else to be void: Provided, That where any conveyance shall be made of any lands

or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, or be transferred or extinguished by act or operation of law, then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed.

"Section 6. That no right of entry shall accrue or action be maintained for a specific performance of any contract for the sale of any real estate, or for damages for non-compliance with any such contract, or to enforce any equity of redemption after re-entry made for any condition broken, or to enforce any implied or resulting trust as to realty, but within five years after such contract was made or such equity or trust accrued, with the right of entry unless such contract shall give a longer time for its performance, or there has been in part a substantial performance, or such contract, equity of redemption, or trust shall have been acknowledged by writing to subsist by the party to be charged therewith within the same period: Provided, That as to any one affected with a trust by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when by reasonable diligence the party defrauded might have discovered the same; but no bond fide purchaser from him shall be affected thereby or deprived of the protection of said limitation: And provided, That any person who would be sooner barred by this section shall not be thereby barred for two years from the date thereof.

"The object of the legislature appears to have been to fix a time within which in the several cases therein mentioned actions must be commenced and claims made. It is right that some period should be fixed, when titles to lands are to be considered as secure and settled. This act declares that no right of entry shall accrue or action be maintained to enforce any implied or resulting trust as to realty, but within five years after such equity or trust accrued.

"The trust here, if there was one, is a resulting trust; it relates to realty, and was created at the time of the conveyance to Harriet Summers, in 1844. Then allowing seven years to commence action to enforce the trust, the time would expire in 1851, and as this ejectment was not commenced until 1859, the act is a bar."

There was a verdict and judgment in favour of the defendant, whereupon the plaintiff sued out this writ, and assigned for error the admission of the evidence and the instruction to the jury above stated.

*G. F. Miller* and *John Porter*, for plaintiff, argued that the proviso in the fourth section of the Act of April 22d 1856, was intended to exempt from the general provisions of the act cases

[Miller *v.* Franciscus *et al.*]

like the present one, and that trusts thus created should be enforced as if the act had never been passed. That even the sixth section of the act did not operate against the plaintiff. Mrs. Miller, being in possession from the time the lot was purchased from Massey, had no rights which required "enforcing." She might have had a bill to compel the conveyance of the legal title, but could not have brought ejectment. The 6th section was intended for cases where no possession was taken by the *cestui que trust.* The Act has no implied retroactive operation: Mullock *v.* Souder, 9 W. & S. 198; Martindale *v.* Warner, 2 Harris 471. Plaintiff's right did not accrue until after the termination of his father's estate by the curtesy less than five years from the time this ejectment was brought: Miltenberger *v.* Croyle, 3 Casey 170. Plaintiff did not become of age until April 1858. The saving clause in the 4th section of the Act of March 26th 1785, (Purd. 653,) is not repealed by the Act of 22d April 1856, and therefore, it does not bar this trust, while the first proviso of the 6th section expressly excepts cases of fraud, of which there is no evidence of any within the plaintiff's knowledge prior to the bringing of this suit. The evidence that the money was furnished by Mrs. Miller was clear and uncontradicted, so that there is no legal or equitable impediment in the way of the plaintiff's recovery.

*W. C. Lawson* and *C. W. Tharp,* for defendant.—The title set up by plaintiff has never been a favourite with the law. The courts have ever tried to repress such claims; and the legislature in the act of 1856 have interposed to stay the mischief which they were creating with the titles and possessions of our citizens. The act is full and express, without any exception, express or implied. A person who relies on such a title must either bring his suit within five years or procure a written acknowledgment of the trust. The act is expressly retroactive in its last proviso, and it commences at the time the "trust accrued;" nor is there anything in the act warranting a construction similar to the 4th section of the Act of March 26th 1788, which protects a plaintiff's title until ten years after he attains his majority.

As to the payment of the consideration by Mrs. Miller, the evidence is, that she had $510, which she loaned to her sister Harriet, taking her note for it, which note this plaintiff now holds.

The opinion of the court was delivered, January 6th 1862, by
WOODWARD, J.—Whether Hannah Miller, late Hannah Summers, had a resulting trust in the lot in question, which at her death descended upon the heir at law, the plaintiff, David Lewis Miller, was a question of law and fact which seems to have been

[*Miller v.* Franciscus *et al.*]

properly tried in the court below. We do not think there was any error in admitting in evidence on the part of the defendant the last will of Harriet Summers. It was part of the defendant's title, and necessary also to raise a legal question which, because it was not decided in the court below, we shall not consider here, to wit, how far the plaintiff was estopped from setting up his present claim of title by the fact that he was an accepting legatee under his aunt's will.

The only question which seems to have been ruled below, supposing the resulting trust to be found by the jury, was, whether the plaintiff was barred from asserting his title by the 6th section of the Act, "for the greater certainty of title and more secure enjoyment of real estate," passed 22d April 1856 : P. L. Sess. 1856, p. 582, and Purd. 654.

The court held him barred. "The trust here," said the learned judge, "if there was one, is a resulting trust, it relates to realty, and was created at the time of the conveyance to Harriet Summers in 1844. Then allowing seven years to commence action to enforce the trust, the time would expire in 1851, and as this ejectment was not commenced until 1859, the act is a bar." The 6th section of the act allows five years "to enforce any implied or resulting trust to realty," and the second proviso is, "that any person who would be sooner barred by this section, shall not be thereby barred for two years from the date hereof." The plaintiff's title had vested before the passage of the act, and the court gave him the full benefit of both periods, that of the limiting clause and that of the proviso. If the plaintiff be subject to this section, he has no reason to complain of the construction and application which the court made of it. But is he subject to it ? Is it applicable to him ? He was a minor when his estate vested—a minor when the Act of 1856 was passed, and he did not attain to his majority until April 1858—a year only before he brought suit. The Act of 1856 has no saving clause for minors, and others under legal disabilities, but the 3d section of the Act of 26th March 1785, Purd. 653, which limits a right of entry into lands to twenty-one years next after the right or title "first descended or accrued," has in the proviso a saving clause in behalf of minors, *femes covert*, and others under legal disabilities, and declares that notwithstanding the expiration of the allotted limitation, they may make entry or bring suit within "ten years next after attaining full age, discoverture," &c.

Now, that the Act of 1856 did not altogether repeal the Act of 1785, even in its application to trust estates, is apparent from the 1st section, which limits and qualifies the saving clause above cited, and similar clauses in all other prior acts. The 1st section reads, "that no exception in any Act of Assembly respecting the limitation of actions in favour of persons *non compos*

*mentis*, imprisoned, *femes covert*, or minors, shall extend so as to permit any person to maintain any action for the recovery of any lands or tenements, after thirty years shall have elapsed since the right of entry thereto accrued, to any person within the exceptions aforesaid, provided that all persons who now have rights unbarred, and who would be sooner barred by this section, shall not be thereby barred for five years from the date hereof."

Harriet Summers took the conveyance from Massey and wife on the 31st December 1844. Supposing her to have held in trust for Mrs. Miller, then a married woman, Mrs. Miller would be entitled, not to ten years after discoverture, according to the Act of 1785, but to thirty years after her right accrued, within which to maintain "any action for the recovery" of her rights. And so would her son, succeeding on her death to her rights, be entitled to his action, not within ten years after his majority, according to the Act of 1785, but within thirty years from the time the right accrued to his mother. In some circumstances this might be a total denial of action to a son when he came of age—in the circumstances of this case it was an extension of remedy much beyond what the Act of 1785 allowed him.

Such was the manner in which the legislature of 1856 modified the Limitation Law of 1785. And, because of the express modification, we assume there was no intention to repeal the prior statute. There is no word in the Act of 1856 which implies an intention to repeal the proviso of the Limitation Law of 1785. If the first section had been omitted altogether, it is very doubtful whether we could have regarded the 6th section as a repeal of that proviso; but with the first section before us, it is impossible to imply a repeal of the proviso of 1785, except as modification and substitution were repeal. Taking the limitation, therefore, as it stands modified by the legislation of 1856, it is apparent that the plaintiff is within it. His suit was brought within thirty years after his mother's right¯of action accrued. It is not material that it was brought within ten years after his own disability ceased. It was brought in good time. It is not barred by the limitation of the 6th section, because that limitation is inapplicable to persons under legal disabilities. Another rule is provided for such persons, and the plaintiff brings himself within it. Hence it follows that the court erred in applying the bar of the 6th section.

I have taken no notice of the admitted fact that Mrs. Miller was in possession under claim of title from the time of the purchase until her death. Here was entry. She had no occasion to bring her ejectment, for she was in full enjoyment of the possession. Still she had a right of action both at law and equity to compel her sister to convey the legal title which she held in trust. And had she lived until the Act of 1856 came in, it

[Miller *v.* Franciscus *et al.*]

would have become her duty, even though her possession was undisturbed, to compel conveyance of the title, or at least a written declaration of the trust.   For that statute was intended to discourage all titles resting in parol, and to compel people to create written evidence of their rights in land.   The 5th section was most unadvisedly repealed by a subsequent legislature, but the 4th and the 6th sections were designed to reduce all *trusts* to writing, or to furnish record evidence of them by putting parties to their action within a reasonable period.   But Mrs. Miller having died before the Act of 1856, it became a rule of law to her successors in title.   It was as much the duty of her heir to create written evidence of the trust as it would have been her duty had she still lived; and this without regard to the actual possession.   The statute meant to superadd to the possession written evidence of the right of possession.   But this duty thus devolved on the heir, was to be discharged under the limitations and provisions of prior acts, as modified by the legislation of 1856.   He has brought his suit in discharge of that duty, and for the reasons before stated, we think it was brought in time.

> The judgment is reversed, and a *venire facias de novo* is awarded.