# Hollinshead's Appeal.

1. To establish a parol trust in relation to land, where no money is advanced, there must be clear and explicit evidence of something more than the violation of a mere parol agreement respecting the land.

2. The evidence in this case held insufficient to raise a trust under the Act of April 22, 1856, P. L. 532.

3. The sixth section of the Act of April 22, 1856, provides that an action to enforce any implied or resulting trusts as to realty, must be maintained within five years after the trust accrued, and that in case of fraud the limitation should begin to run from the discovery thereof, or when the party defrauded might by reasonable diligence have discovered the fraud.

*Held,* that after the statute began to run, it was not stopped by the birth of children whose interests were affected by it.

4. A., a trustee appointed under a deed of trust was dismissed by the Court of Common Pleas, and was afterwards reinstated, certain restrictions personal in their nature being imposed upon him under § 17 of the Act of June 14, 1836, Purd. Dig. 1418. B., his successor in the trust, was appointed "in place of A.," but without any express limitations on his power. B., having been discharged, C. was appointed "in the place and stead of B." C., as such trustee, settled with D., who had been acting as agent for the trust estate, and receipted in full for the balance due the estate. In an action by the heirs of the cestui que trust to enforce against D. an alleged trust growing out of his connection with the estate :

*Held,* that C. was appointed with all the power and authority of the original trustee, and that the plaintiffs were barred by his acts.

[Hollinshead's Appeal.]

March 29th 1883. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, GREEN and CLARK, JJ. STERRETT, J., absent.

APPEAL from the Court of Common Pleas No. 2, of *Philadelphia county:* Of January Term 1883, No. 283.

This was a bill in equity by Henry R. Hollinshead and others, children and heirs-at-law of William Hollinshead and heirs of Sarah E. Whitaker (formerly Hollinshead) deceased, against Mary G. Whitaker and others, heirs-at-law of Robert Whitaker deceased, and William Overington and others executors of the last will of said Robert Whitaker deceased, praying that a certain sheriff's deed of June 21st 1851, under which Whitaker took title to premises in Philadelphia county, be decreed a mortgage to secure his advances, and that plaintiffs have a right to redeem the same ; that an account be taken of the advances made and profits received by Whitaker ; and for a conveyance to the plaintiffs.

From the report of the Examiner and Master appointed by the court (Charles H. Matthews, Esq.), the facts of the case appeared to be as follows :

William Hollinshead the plaintiffs' ancestor was a half brother of Sarah E. Hollinshead. The latter intermarried with Robert Whitaker, the defendant's ancestor on December 29th 1839, and died March 6th 1864, intestate and without issue.

The said Sarah E. Hollinshead, by deed dated May 9th 1838, and recorded May 11th 1839, conveyed, inter alia, the premises described in the bill for a nominal consideration to her father E. I. Hollinshead in trust to receive the rents and profits, and pay over one moiety thereof to Sarah E. Hollinshead free from the control of any future husband ; the other moiety to William Hollinshead during his life, free from any liability for debts to be contracted.

" If either of the cestuis que trustent should die without lineal descendants, to pay whole of said proceeds to the survivor ; and after the death of the cestuis, in trust for the use of their issue as tenants in common according to the intestate laws of Pennsylvania. If but one of the cestuis should leave issue, then for the use of such issue, their heirs and assigns forever ; and if either of them should die, leaving lineal descendants during the life of the other, then in trust as to one moiety to the use of such issue, as aforesaid, and in trust as to the other moiety to the use of said issue, as aforesaid, after the death of the survivor of the said Sarah and William, without lineal descendants ; but if either should die without issue, then in trust for such persons and estates as Edmund I. Hollinshead shall by will ap-

point, and in default of such appointment then to the use of the right heirs of Sarah E. and William Hollinshead forever."

The trustee was given also a full power of sale, investment and appointment of his successor. E. I. Hollinshead continued to act as trustee until October 4th 1845, when he was dismissed by the court of common pleas and Eli N. Price was appointed in his place. On July 7th 1846, E. I. Hollinshead was restored as trustee upon certain conditions, viz.

The deeds of the premises in Pennsylvania to be deposited with George M. Wharton and St. George T. Campbell, and delivered only by consent of all parties in interest; Mrs. Whitaker and William Hollinshead to collect the rents of the premises respectively assigned to them in lists annexed, paying all expenses upon the same. The trustee to revoke the letters of attorney on application and cause shown. No conveyance, mortgage or disposition of any part of the trust estate in Pennsylvania to be made without the express authority of the court. The order in no way to affect the liability of Hollinshead for any acts done while trustee.

The land described in the bill was one of the properties thus apportioned to William Hollinshead.

On May 1st 1847, E. I. Hollinshead was again dismissed as trustee, and Richard Smethurst was appointed in his place without security. On December 29th 1849, Samuel Rhodes was appointed trustee, also without security, in the " place and stead " of Mr. Smethurst, upon the petition of Mr. and Mrs. Whitaker and of William Hollinshead. Rhodes died on December 26th 1861, and no successor was appointed in his place.

By deed dated April 5th 1843, recorded at Philadelphia, the premises described in the bill were conveyed by E. I. Hollinshead, trustee, to William L. Banning in fee for a recited consideration of $6,000. In fact there was no valuable consideration paid for this conveyance. Joseph Swift by deed dated April 5th 1843, and duly recorded, for a recited consideration of $6000 conveyed a tract of land in Gloucester county New Jersey, to E. I. Hollinshead in fee, in trust for the uses created by the deed of May 9th 1838, from Sarah E. Hollinshead to E. I. Hollinshead.

William L. Banning, by deed dated April 6th 1843, duly recorded, mortgaged the premises described in the bill to Joseph Swift to secure William Hollinshead's bond conditioned for the payment of $6,000. The purpose of this mortgage was to pay the consideration of the New Jersey real estate, conveyed to Hollinshead by Swift. Banning on April 12th 1843, reconveyed the premises for a nominal consideration to E. I. Hollinshead in fee in trust for the uses created by the

trust deed, and subject to the payment of the Swift mortgage; which mortgage was assigned by Swift on October 21st 1843, to the executors of the will of James C. Fisher, deceased.

The premises in question had at one time been the property of E. I. Hollinshead, who had conveyed it to one Jacob Ridgway, from whom Miss Sarah E. Hollinshead had acquired title. Certain creditors of E. I. Hollinshead who had obtained judgments against him, amounting to over $14,000, and revived them from time to time, on March 27th 1851, levied on the right title and interest of E. I. Hollinshead, deceased, in certain properties of the trust estate, including the premises described in the bill.

These levies were made without collusion, and all the proceedings by the judgment creditors of Edmund I. Hollinshead were adverse and hostile to the interests of the cestuis que trustent; and all efforts to compromise their claims were unsuccessful. When it became evident that these creditors were determined to proceed with their levies, in order to protect the property from the effect of their executions, Robert Whitaker, April 12th 1851, purchased with his own money the Swift mortgage, which was then held by Fisher et al., executors.

An amicable action upon the Swift mortgage was entered by Fisher et al. executors and assignees; judgment was entered April 18th 1851, and a levari facias was issued thereon, returnable on the same day, with the executions upon the above judgments. The properties so levied upon, were all exposed to sale by the sheriff May 5th 1851; and the premises described in the bill were sold under the said executions for the sum of $12,000 to Robert Whitaker, who paid the price therefor out of his own funds, and he received a sheriff's deed for the same dated June 2d 1851.

Mr. Whitaker entered into and retained exclusive possession of the premises from the time of his purchase until his death.

The value of the farm was about $25,000, but it could not have been sold at that price in 1851, owing to the condition of the title.

On August 16th 1852, Robert Whitaker presented a statement showing a balance due the estate of some $6,787.02 and charging himself " by extra value of farm and other properties over prices bought at sheriff's sale $10,000." This account was subscribed :

" Received the above balance in full.     I acknowledge the justness and correctness of the SAMUEL RHODES,     foregoing account and Trustee.     request that it may be allowed by the Trustee.

Aug. 16, 1852.     WM. HOLLINSHEAD.

7 OUTERBRIDGE—11.

The plaintiffs contended that Whitaker purchased the premises in pursuance of an agreement made with the parties in 1850, viz.: that he would buy and foreclose the Swift mortgage, purchase the property, advancing the money therefor, and pay or settle the judgments, holding the title with the effect of a mortgage for the benefit of the trust estate, and when his claims thus created should be paid, the property should be held by him solely for the uses limited by the deed of trust. The plaintiffs relied chiefly on the testimony of Wm. L. Banning (who acted as the agent of William Hollinshead), the entries in Mr. Whitaker's books and his settlement of August 16th 1852. The more important passages of Banning's testimony were as follows:

" Mr. Whitaker agreed to advance the money to purchase this mortgage to protect the estate. . . . The property was sold by the sheriff on the same evening under the different writs, and bought in by Whitaker at the sale, for I think, eleven or twelve thousand dollars, with the express understanding, all the time solemnly made between him and I, which was my reason for consenting to the arrangement, representing Hollinshead, that he would hold this property in trust for the parties in interest under the trust need. First, of course, he to be paid back out of the security that this gave him, the money advanced to protect the estate. . . . There never was a more solemn understanding made between mortal men, than was made in regard to that transaction. . . . He agreed to advance the money to purchase the mortgage in the interest of the estate, to protect the estate. And under that agreement he did purchase it. An execution was issued upon it, and the property sold under it, the same night as the sale under the Allen judgment; and he advanced the money to pay the sheriff on that sale. And all, from the inception of the idea of purchasing the mortgage, up to the time of the consummation of the sheriff's sale, all, with the positive understanding that he bought it in for the estate, and that he would restore it to the estate; all the time saying that he wanted security for the amount of money that he had advanced.

" In many conversations he agreed to raise the money to purchase that mortgage, and to buy in the property at the sale, to protect the estate. That understanding was often reiterated, never questioned and never any other thing thought of it."

The settlement of August 16th 1852, was witnessed by Messrs. Kennedy and Banning. William Hollinshead made no objection to the settlement in his life-time. There is no evidence of any effort by Robert Whitaker to conceal the facts of his purchase, and in his letter to the mother of the plaintiffs, of March 2d 1865, he speaks of having bought the farm and

kept it "at the valuation." She came to Philadelphia in that year and made claim of him to the property in question on behalf of her children, and at that time, and in subsequent interviews in 1869 and 1873, he stated to her that he bought it at the sheriff's sale, and her children had no rights in the matter.

The Master reported that he found no sufficient evidence in the case of an agreement by Whitaker to reconvey the properties to the trust estate upon payment of his advances. "His promise, indefinite in its terms, was made to Banning, the representative of Hollinshead, and all that was done subsequently, shows that Banning's principal, and not the trust estate, was to receive some of the benefit that might be realized by Whitaker out of the property." The plaintiffs in the case were born respectively in 1853, 1855 and 1857. Robert Whitaker died in 1878, and this bill was filed 1879.

The Master reported as to the law, inter alia, as follows:

"The defendant set up the Act of 22d of April 1856 (P. L. 532), as a bar to the proceeding. Where no money is advanced, there must be something more than the violation of a parol agreement in relation to land, in order to raise a trust which equity will support: Story's Eq. Jur. sec. 1201; Bisph. Eq. sec. 80. This principle is recognized in numerous cases. If nothing more existed in this transaction than the breach of Whitaker's alleged agreement, the case would be within the rule above referred to. The rule is different, where one procures a title which he could not have obtained except by a confidence reposed in him, which he has abused; the trust in such a case arises ex maleficio, and the purchaser will be treated as a trustee, for the purpose of working out the equity of the injured party. The plaintiffs, in their bill, charge fraud on the part of Whitaker in procuring the title, which would bring the case within the rule above referred to, if the trust is established by evidence, "clear, explicit and unequivocal:" Kistler's Appeal, 23 P. F. Smith 400. But the question to be decided is as to the operation of the sixth section of the Act, upon this proceeding. The Act of 1856 was evidently intended to quiet the title to real estate, and to remove some of the uncertainties that clouded it. This appears from the title, the preamble, and the body of the Act. It is a highly beneficial statute, and ought to be liberally construed. The sixth section provides that, "no right of entry shall accrue, or action be maintained, for a specific performance of any contract for the sale of any real estate, . . . or to enforce any implied or resulting trust as to realty, but within five years after such contract was made, or such equity or trust accrued, . . . Provided, That as to any one affected with a trust, by reason of his fraud, the said limita-

tion shall begin to run only from the discovery thereof; or when, by reasonable diligence, the party defrauded might have discovered the same. . . And provided, That any person who would be sooner barred by this section shall not be thereby barred for two years from the date hereof." It is clear from the proviso in the section, as to persons affected with a trust by reason of their fraud, that trusts ex maleficio are within the Act. . . The trust as to this property arose, if at all, with the acquisition of title by Whitaker, in 1851. The eldest of these plaintiffs was not born until 1853, and it was earnestly contended that the section is prospective, and the plaintiffs being minors, were not included in its operation. The authorities, however, show that the Act has no saving clause for minors and others, under legal disabilities; and that this section is retroactive, appears in the final proviso, giving two years to those whose rights would be sooner barred by its operation: Maul *v.* Rider, 1 P. F. Smith 384; Warfield *v.* Fox, 3 Id. 385; Douglass *v.* Lucas, 13 Id. 12; Korn *v.* Browne, 14 Id. 58; Christy *v.* Sill, 14 Norris 380. In the Master's opinion, the settlement of August 16th 1852, discharged any obligation incumbent upon Whitaker. His promise, whether to the trust estate, or to William Hollinshead, rested upon parol, and was extinguished by the receipt of the trustee and the release of William Hollinshead; and the only witness who is called to prove the fact, and the terms of the obligation, gave his written declaration in approval of that settlement. The order of court, restoring Edmund I. Hollinshead as trustee, was made in the exercise of the discretion allowed by the seventeenth section of the Act of 14th June 1836 (Purd. Dig. 1418), and imposed certain restrictions, which were personal to him. His successors, although not required to give security (Rigler *v.* Cloud, 2 Harris 361), were appointed without limitation or reference to this order; and each of them was invested with the powers and authorities of the original trustee. "The policy of the statute requires that it should receive a liberal construction," and the discretionary powers given to a trustee by deed, will, upon his removal, pass to his successor appointed by the court of common pleas under the Act referred to: Kuhler *v.* Hoover, 4 Barr 334; Wilson *v.* Pennock, 3 Casey 238. There was no restriction upon Samuel Rhodes as trustee, and his right to receive the money, in discharge of the obligation, cannot be questioned. If he committed a breach of trust by permitting Hollinshead to receive the money, the present proceeding affords no remedy for his wrong-doing.

The Master accordingly reported a decree dismissing the bill. Some forty exceptions filed to his findings of fact and con-

clusions of law were dismissed by the court below, MITCHELL, J., delivering the following opinion :

" We are of opinion that complainant's case, whatever its merits may be, is barred by the analogy of the statute of limitations, and the reasoning of the Master upon this point is adopted as expressing the views of the court upon the facts as the Master was then considering them. But the Master does not find that there was any actual fraud, nor concede it, except arguendo. As Robert Whitaker was only connected with the parties at the time as husband of one of the co-tenants, between whom there had been a parol partition, sanctioned at least as a provisional division of the estate, by an order of the Court of Common Pleas, entered July 7th 1846, in the case of the Hollinshead estate, it might well be doubted whether any resulting trust arose from his purchase at the sheriff's sale. (See the remarks of STRONG, J., in Maul v. Rider, 1 Sm. 383.) But we do not desire to rest the case upon this point. We have examined the whole evidence carefully, and fail to find any evidence of actual fraud by Whitaker ; and if he was liable to account at all, it was by virtue of a resulting or constructive trust arising from his position in relation to the other parties. In such cases of constructive fraud, the better opinion is that the statute of limitations runs from the date of the act committed, and not from the time of the discovery. (See Morrell v. Trotter, 39 Legal Intell. 256, citing Musselman v. Eshleman, 10 Barr 394, and Waterman v. Brown, 7 C. 161.) We are, therefore, of opinion that the complainants are barred by the express words of the sixth section of the Act of 1856, in addition to the grounds assigned by Master in considering the proviso relative to cases of fraud. With these views, which dispose of the whole case, we deem it unnecessary to review the numerous exceptions in detail."

The plaintiff took this appeal assigning for error the action of the court in dismissing their several exceptions filed to the report of the Master.

*F. F. Brightly* (with him *Pierce Archer*), for appellants.

*Charles S. Pancoast* (with him *John G. Johnson*), for appellees.

The opinion of the court was filed April 16th 1883.

PER CURIAM.—A careful examination of the evidence fully justifies the able report of the Master and his conclusions of law. The court adopted his conclusion, and decreed accordingly.

This was a weak attempt to establish a trust by parol. The rule is well recognized that where no money is advanced there must be something more than the violation of a parol agree-

[Fairfax's Appeal.]

ment in relation to land to raise a trust which equity will support. When other ingredients are present the evidence of the alleged agreement must be clear and explicit: Plumer *v.* Guthrie, 26 P. F. Smith 456. The Master was unable to find the existence of a valid agreement to reconvey on any certain terms and conditions. If any valid trust ever existed it was barred by the statute, by lapse of time, and by the settlement of the parties. After the statute began to run it was not stopped by the subsequent birth of the children.

Decree affirmed and appeal dismissed at the costs of the appellants.