## Way, Appellant, *v.* Hooton.

[Marked to be reported.]

*Resulting trust—Pleading—Act of April 22, 1856.*

The act of April 22, 1856, P. L. 532, is a statute of repose, and does not need to be specially pleaded.

*Resulting trust—Persons under disability.*

As the act of April 22, 1856, contains no exceptions in favor of persons under disabilities, such persons are bound by the act in the same manner as persons sui juris.

A trustee for minors with the knowledge of their guardian used a portion of the trust funds in the purchase of a farm, the title to which he took

in himself. Subsequently he borrowed money and confessed judgment to secure the loan. The lender had no notice of the use of the trust fund in the purchase of the land. The judgment was subsequently assigned to defendant's testator. Ten years after the purchase of the farm the trustee made an assignment for the benefit of creditors, and the assignee sold the land at public sale to defendant, who brought it in his capacity as executor, for the purpose of protecting the judgment. Two days before the sale defendant was notified that plaintiff claimed a resulting trust in favor of her wards. *Held,* that the claim was barred by the sixth section of the act of April 22, 1856.

Argued May 4, 1893.  Appeal, No. 292, Jan. T., 1893, from decree of C. P. Chester Co., dismissing bill in equity against Francis C. Hooton, executor of James S. Neely, deceased, Francis C. Hooton, individually, and Peter Supplee, Jr.  Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Bill in equity to enforce resulting trust.

The master, Thos. S. Butler, Esq., reported the facts as follows :

" Peter Supplee, Jr., acquired title to a farm in Honeybrook township, Chester county, Pa., of about one hundred and eighty-three acres, on the ninth day of March, 1880.  Horatio J. Supplee, the former owner of the farm, died intestate, and left to survive him a widow and seven children, one of whom was Peter Supplee, Jr.  The death of Horatio J. Supplee occurred in November, 1876, and it seems his widow and children disposed of his real estate without the intervention of law or lawyers, by selling it to Peter for the sum of $14,983.59, and fixing the widow's interest therein at $4,994.53, which was secured by a mortgage upon the land conveyed to him, conditioned for the payment of the interest thereon to her during her life, and at her death the principal sum to the heirs and legal representatives of Horatio J. Supplee, deceased.  Above his own interest, to the extent of one seventh, the balance of the consideration, with a small exception, for this land, Peter had none.  One sister was willing to give him trust, and took his obligation for $1,400, and $27.00 in cash, which made her share.  Peter still has the trust, and the sister the obligation.  Peter paid the shares of five of his brothers and sisters, about the time of the conveyance, out of the money which he received as a trustee

from the estate of Narcissa L. Way, and it is this part of Peter's performance which brings about the present lawsuit.

"Narcissa L. Way died in West Chester, January 21, 1875. She left her last will and testament, wherein and whereby she bequeathed the residue of her estate to her executor in trust for her brother, Joseph B. Way, during his life, and upon his death over to his children. William Darlington, Esq., was named as the executor. Letters testamentary were granted to William Darlington, Feb. 4, 1875. The fund herein bequeathed, remained in his hands to the time of his decease, which occurred in the fall of 1879. After this event, Joseph B. Way came to Peter Supplee's house in Honeybrook, and requested him to accept the trust in the place of Mr. Darlington.

"Peter appears to have been willing, as his petition for the appointment was presented on the 20th of February, 1880, and his bond in the sum of $15,000 approved the same day. Jos. B. Way and Peter Supplee, Jr., were brothers-in-law, having married sisters. Mr. Darlington had the trust funds invested in municipal bonds, which were transferred to the new trustee. Soon after, the two brothers-in-law set about to get some advantage from the principal of the fund. The bonds were sold and the sum realized amounted to $8,500. Of this he loaned Joseph B. Way $1,800, and took an obligation from him. Jos. B. Way was at the time very sick, and apprehending his early death, he desired to leave his affairs in a condition most advantageous to his family. The money loaned him from the trust was used in paying his debts, and the understanding was had that Joseph's son, Bernard Way, should take the obligation when he arrived at age in satisfaction of his share of the fund. This arrangement was carried out. Joseph B. Way died in May, 1880.

"This statement of the facts traces the trust fund into the hands of Peter Supplee, Jr. He received $8,500, and paid $1,800 to Joseph B. Way; the balance, or the sum of $6,700, he used to acquire the title to the farm over which this dispute arises. Peter Supplee, Jr., testifies: 'I received $8,500, for all the bonds. I loaned about $1,800 to Joseph B. Way, and took an obligation from him. After I made the loan to Joseph B. Way, the entire balance of the trust fund was used in the acquisition of this real estate. This trust fund was used in the

payment of the farm and distributed to my brothers and sisters who owned the farm. These payments occurred about the time I got the title.'

" Do these facts create a trust in favor of the owners of the fund ? The plaintiff in her bill contends that they do, and asks the court amongst other things to direct the defendant to make her a deed for the interest of her minors in the premises. The defendant makes no denial of these facts in his answer, but calls upon the plaintiff to produce her proof of them. This she has done and no contradiction of them has been offered by the defendant. It seems plain to the master that a resulting or presumptive trust arose from the relation of these parties. Indeed, it was not seriously denied by defendant's counsel in his argument, and his brief contains no defence to the plaintiff's position in this respect. Peter Supplee, Jr., was the trustee, and had possession of this trust fund as found above. He used it in the purchase of the property and took the title in his own name. ' In such a case a trust will result by operation of law for the benefit of the trust estate as the trustee will be presumed to have intended that the purchase should enure to the benefit of the estate.' Bispham's Equity, § 86.

" While the defendant may concede that a trust resulted here in favor of the cestuis que trust, he contends that the funds cannot be followed into this property for two reasons : (1) That he had no notice of the claim at the time he purchased the property. (2) That the 6th section of the act of April 22, 1856, P. L. 532, is a complete bar to the plaintiff's recovery.

" On April 3, 1890, Peter Supplee, Jr., made an assignment of all his real and personal property for the benefit of his creditors to Davis K. Loomis. Prior to this time he had settled with two of the children of Joseph B. Way, and there remained but two others, Joseph W. Way and Earnest Way, unprovided for, and who have for their guardian their mother, Mary C. Way, the plaintiff in the bill. She is a testamentary guardian named in the will of her husband.

" On Oct. 2, 1890, upon the petition of Davis K. Loomis, the assignee, the court made an order authorizing him to make public sale of the real estate of Peter Supplee, Jr., for the payment of his debts. On March 9, 1891, the assignee made a return to the order of sale, in which he stated that he had sold

on Oct. 25, 1890, the land, over which this dispute now is, to Francis C. Hooton, Esq., executor of James S. Neeley and trustee; which sale was on the same day confirmed nisi. On April 7, 1891, the assignee made a deed for all the right, title and interest of Peter Supplee, Jr., in said property to Francis C. Hooton, Esq., executor of James S. Neeley, deceased, the defendant in this suit.

"The first information which Col. Hooton appears to have had concerning a resulting trust in this land, came from Mr. Hayes, of counsel for the plaintiff in the bill, two days before the sale, at which he (Col. Hooton) became the purchaser. Col. Hooton testified on this point as follows: 'I remember Mr. Hayes calling on me two days before the sale of the Supplee real estate. Mr. Hayes said that he thought he ought to say to me, that it was claimed on the part of the Way heirs, that the Supplee real estate had been paid for with the money of the Way heirs, who were minors, and that a resulting trust thereby arose in their favor, and, as a consequence, the lien of the Neely estate, they would claim, could not be paid until after the money due by this resulting trust was paid. He said that he thought there was no doubt about this, that he could give me some authorities to examine if I would come down to his office. I went to his office and got the authorities from him, wrote them down on a piece of paper. I went to his office the same day, an hour after the conversation ended at my office. He said that Peter Supplee had been appointed a trustee in the place of William Darlington. I said that I was under the impression all along (never having examined it), that Peter was a guardian and not a trustee. He said that they were preparing a paper for me to sign, and that one of them would bring it to me. A paper similar to this paper (a copy of which will follow), was brought to me the day after Mr. Hayes called upon me (it being the day before the sale of the real estate), by Mr. Hause, who desired me to sign it. We had some discussion. I declined to sign the paper. I said, Frank, can you tell me when the trust in favor of these heirs occurred? I said, that is what I want to know. He said he could not.' The paper was offered in evidence by the counsel for the plaintiff; it is as follows:

"'Whereas, it is claimed by Joseph W. Way and Earnest

Way, that they are the owners, in whole or in part, of the title which appears of record in Peter Supplee, Jr., to one hundred and eighty-three acres of land in Honeybrook township, for which deed was made to him by the heirs of Horatio J. Supplee, deceased, and that said title is a resulting trust in their favor.

" ' And, whereas, the said Peter Supplee, Jr., has made an assignment for the benefit of creditors, to Davis K. Loomis, and said assignee has advertised said real estate for public sale.

" ' It is therefore agreed that the said assignee shall proceed to sell the said real estate, when in his judgment, it is proper so to do, and that he will hold the proceeds of said sale subject to the right of the said Joseph W. Way and Earnest Way, to establish their claim by a resulting trust to the said title or any part thereof, and that said question shall be determined on a distribution of said estate by the auditor or the court, without regard to said trust being asserted adversely before said sale, and that the claim, if any, of the said Joseph W. Way and Earnest Way, may be heard and disposed of by said court in the distribution of said estate.

(Signed)        " ' C. W. TALBOT, Lien Creditor.'

" ' October 24, 1890.'

" At the time this paper was presented to Col. Hooton, there was no signature attached to it.   It had not yet been presented to Mr. Talbot.   It also had another clause in it, as follows: ' But a conflict about the title before said sale would be likely to injure the sale and make the property produce less than its fair price, if any doubts were suggested.'

" This clause is now scratched over and not intended to be used as a part of the agreement.   The testimony shows that the scratching was done by Mr. Talbot before he signed the paper.   As has already been said, Col. Hooton declined to sign this paper when it was presented to him, but after some hesitation, wrote and signed the following: 'I decline signing the above paper, but I admit that I yesterday received notice from Wm. M. Hayes, Esq., of the claim of the Ways to a certain resulting trust, and I am willing to dispense with public notice of such claim at the sale.

" ' Witness my hand this 24th day of October, A. D. 1890.

(Signed)       ' FRANCIS C. HOOTON,
' Executor estate of James S. Neely, dec'd.'

" Col. Hooton further testified that he said to Mr. Hause, that if anybody gave notice at this sale of the alleged resulting trust, the farm would not bring five cents.    A conversation was had the day of the sale between Col. Hooton and Peter Supplee, Jr., before the sale commenced, about this alleged resulting trust.

"In this conversation, Peter testified that he told Col. Hooton all about his purchase of the farm, how he had been appointed a trustee in the place of William Darlington, and that after making Joseph B. Way a loan of $1700 or $1800, he had used the balance of the trust funds in paying for the place."

The master further reported that it was the duty of the guardian to investigate the loan when she became guardian, and that if she had she would have known that the trust funds had been used in payment for the farm.

The master recommended that the bill should be dismissed, with costs on plaintiff.

The following exceptions were filed by plaintiff to the master's report: " The master and examiner erred in his conclusions of law as follows : (1) In determining that the trust arose on March 9, 1880, and that the limitation prescribed by § 6 of the act of 1856, began to run at that time ; (2) that § 6 of the act of 1856, was applicable and barred the minors whose interests are here involved ; (3) that § 6 of the act of 1856 was a bar to the relief prayed for in the bill ; (4) in determining that the trustee, Supplee, and the purchaser with notice could avail themselves of the bar prescribed by § 6 of of the act of 1856 ; (5) in determining that Mary C. Way, the guardian, was bound to make an investigation when she became guardian, in order to ascertain the condition of the trust fund ; (6) in determining that the act of 1856 is a statute of repose simply ; (7) in determining that the resulting trust was not valid and was not in existence at the time of the purchase of the title by Francis C. Hooton, executor, etc ; (8) in recommending the dismissal of the plaintiff's bill ; (9) in imposing the costs of the proceedings upon plaintiff."

The court, WADDELL, P. J., overruled the exceptions and dismissed the bill.

*Errors assigned* were (1–9) dismissal of exceptions, quoting them.

*R. Jones Monaghan* and *Wm. M. Hayes, J. Frank E. Hause*
with them, for appellant.—A judgment creditor is not a pur-
chaser within the recording acts. He has no right to, nor in-
terest in, the land. He has no such interest as will prevent the
enforcement of a trust: Fulton's Est., 51 Pa. 204; Sheetz v.
Marks, 2 Pearson, 302; 2 L. Cas. Eq. 89.

The act of 1856 has no application, because the trustee from
the time of his purchase was in possession, and so continued
until the sale by his assignee; and the possession of the trustee
was the possession of those interested in the fund: 1 Perry on
Trusts, sec. 132; Barnet v. Dougherty, 32 Pa. 371; Cross &
Gault's Ap., 97 Pa. 471; Brickell v. Earley, 115 Pa. 478; Kim-
mell v. Smith, 117 Pa. 183; Hopkins's Ap., 8 Cent. R. 860;
s. c., 9 Atl. R. 867.

The trustee and cestui que trust were tenants in common and
their possession joint: Tulloch v. Worrall, 49 Pa. 133; Rick-
ett's Ap., 21 W. N. 229; Miskey's Ap., 107 Pa. 629; Darling-
ton's Est., 147 Pa. 629; Doran v. McConlogue, 150 Pa. 104;
2 Perry on Trusts, § 863. The statute had no operation until
the discovery of the facts by the guardian in 1890; McDowell
v. Potter, 8 Pa. 189; Wickersham v. Lee, 83 Pa. 416; Mullen
v. Doyle, 147 Pa. 517.

The supposed negligence of the guardian does not bar the
rights or title of the minors: Light v. Zeller, 144 Pa. 571;
Western Union Telegraph Co. v. Davenport, 97 U. S. 369.

The act cannot be used as a defence, because it was not set
up in the pleadings, either by Supplee, the trustee, or by Mr.
Hooton: Christy v. Sill, 95 Pa. 384; Cochran v. Young, 104
Pa. 337; Broe v. Boyle, 108 Pa. 82; Hayes's Ap., 113 Pa. 380;
Heath v. Page, 48 Pa. 142; Ruckman v. Decker, 23 N. J. Eq.
283.

The purchase by Hooton with full knowledge of this result-
ing trust made him a new trustee for these minors: Sadler's
Ap., 87 Pa. 154; Coble v. Nonemaker, 78 Pa. 506.

*R. T. Cornwell, Gibbons Gray Cornwell* with him, for appel-
lee.—The act of 1856 is applicable to the trust in this case:
Christy v. Sill, 95 Pa. 380; McNinch v. Trego, 73 Pa. 58;
Clark v. Trindle, 52 Pa. 492; Roy v. Townsend, 78 Pa. 329;
Hollingsworth's Ap., 51 Pa. 521; Act June 10, 1881, P. L. 102.

Plaintiff at the time of the purchase assented to it and made a loan of the money to her brother-in-law. She was bound to know that in so doing she was loaning the money and waiving every security but his own, and that of the sureties on his bond as trustee. It was competent for her to do this, for while it has been held that an equitable interest in land such as was here held by the wards is within the statute of frauds, it has been held in the same cases that such equitable interest may be waived by parol so as to put it out of the power of the holder to obtain the interposition of a chancellor in his behalf; or they may be released: Kline's Ap., 39 Pa. 468; Boyce v. McCulloch, 3 W. & S. 429; Dayton v. Newman, 19 Pa. 194; Reed v. Meller, 122 Pa. 635; Eshleman v. Lewis, 49 Pa. 410.

It has been repeatedly held that inasmuch as there is no exception in the act in favor of persons under disability of any character, it applies to minors, femes covert and persons non compos mentis alike: Warfield v. Fox, 53 Pa. 383; Mobly v. Oeker, 3 Yeates, 202; Pratt v. Eby, 67 Pa. 396; Folmar's Ap., 68 Pa. 482; Kenyon v. Stewart, 44 Pa. 180; Hunt v. Wall, 75 Pa. 413; act of April 22, 1856; Maul v. Rider, 51 Pa. 384; Douglass v. Lucas, 63 Pa. 12; Korn v. Brown, 14 Pa. 58; Christy v. Sill, 95 Pa. 380; Oliver's Ap., 101 Pa. 299.

This court has repeatedly held that the statute is not one of limitations, but of repose; that it is a rule of law; that it is a law of evidence applicable to property titles, and that it is available under the general issue plea: Hegarty's Ap., 75 Pa. 517; McCort's Ap., 98 Pa. 33; Cochran v. Young, 104 Pa. 337; Christy v. Sill, 95 Pa. 380; Douglass v. Lucas, 63 Pa. 12; Bell's Ap., 22 W. N. 471.

In Reed v. Mellor, 122 Pa. 635, it was held that if a trustee buys land with a trust fund which he has no right to use in that way, or if he takes a conveyance in his own name, instead of the trust fund, title does not rest in the cestui que trust by mere operation of law, but the trustee may sell the same for a good consideration and pass a legal title.

A purchaser at an assignee's sale, under an order of court, is a purchaser for value, and has a right to rely upon the record title. Purchasing without notice of a prior equitable claim, when the property is sold as unincumbered, he obtains the entire legal estate divested of the equity.

OPINION BY MR. JUSTICE GREEN, June 7, 1893:

We are clearly of opinion that this case was correctly decided by the master and learned court below. The real estate which is the subject of the present contention was never impressed with any trust on the face of the title. It is not a case in which a trustee has purchased the land which was the subject of the trust, nor is it the case of a trustee acquiring title in himself to the trust estate by any act of purchase or release from the cestui que trust. Nor yet is it a case where a trust fund was used by the trustee in the purchase of the entire title to the land in question. In its largest and best aspect for the plaintiff, it is a contention which arises upon a pure resulting trust, growing exclusively out of the use by a trustee of a portion of a trust fund, in paying for the tract of land in dispute, which was purchased by the trustee from strangers to the trust, for a consideration nearly three times as large as the amount of the trust money which was used in paying the price of the land. The title to the land purchased was necessarily taken in the name of the purchaser, Peter Supplee, Jr., who paid or secured all the remainder of the purchase money by other means than by the use of any of the trust money in his hands. Peter Supplee, Jr., the trustee of the Way children and their father, purchased the land in question on March 9, 1880, for $14,983.59, and, although he used $6,700 of the trust fund in paying for the land, by subsequent payments on account of the trust fund he reduced the amount for which he is accountable as trustee to $4,502.23, as appears by the settlement of his account as trustee confirmed by the orphan's court on Sept. 8, 1890.

The title of the defendant originated in a judgment confessed by Peter Supplee, Jr., in favor of Robert Neely to secure a loan of $4,500 made by Neely to Supplee on February 1, 1884. This judgment was duly assigned to James S. Neely, who was Robert Neely's son, and was regularly revived so as to continue the lien until, and after, the sale of the land by the assignee of Peter Supplee, Jr. At the time of the loan of the money by Robert Neely to Supplee the record showed that the title to the land in fee simple was in Supplee, and he was, and had been, in full possession of the land as the owner thereof, from the time of his purchase of the title. There is not the least pretence, anywhere on this record, by any testimony or any

finding, that Robert Neely ever had any notice, actual or constructive, of the secret resulting trust which is now set up against the Supplee title. Had he taken a mortgage instead of a judgment for the security of his loan, his title would have been indefeasible by this trust in any event. James S. Neely died in May, 1890, leaving a will upon which letters testamentary were granted to the defendant, Francis C. Hooton. On April 3, 1890, Peter Supplee, Jr., made an assignment of all his property for the benefit of his creditors, and on April 25, 1890, this land was sold at public sale and the defendant, Hooton, bought it in his capacity as executor, for the purpose of protecting the interests of his testator's estate. Two days before the sale he was notified of the plaintiff's claim under a resulting trust in favor of her wards. It will be seen therefore that the right under which the defendant's title originated was an entirely innocent right, untainted with any laches or with any failure of duty on the part of Robert Neely, who loaned his money on the faith of the title in Supplee, who had not only a complete and, apparently, perfect legal title, but was in the full and exclusive possession of the land at the time the loan was made. No circumstance is disclosed on this record, which did or could put him upon inquiry for any such secret trust as is now set up against him. The notice which was given him just before the sale neither added anything to the right of the plaintiff, nor detracted anything from the right of the defendant. If the bar of the statute of 1856 was a good defence it had already closed against the plaintiff's title, and the notice could not restore it; neither could it take from the defendant the right to set up the statute as a defence.

In the light of the facts as above stated and as found by the master, it is manifest that the plaintiff's claim is founded only upon a resulting trust pure and simple. The master and the court below found that there was such a trust to the amount of the trust money used in the purchase of the land, but they also found that the claim of title based upon the trust was barred by the sixth section of the act of 1856. They held that the act was a statute of repose and could be used without being pleaded specially, and also that the minority of the plaintiff's wards was not a protected disability. Upon both points the authorities are clearly with the defendant. The master found

as a fact that the plaintiff knew from the very beginning that the trust money was being used by Supplee, who was her sister's husband, in part for the payment of the purchase money of the farm. She so testified herself. She said: " I knew that Peter was paying $80 per acre for his father's place. I knew that he was buying it in part with this trust money. I knew that he was paying the other heirs their shares of the purchase money of the farm out of this trust money." All this was in 1880, and it was not until 1891 that the resulting trust was set up against the title acquired by the defendant. Of course it could have been asserted in 1880, and had the plaintiff then demanded what she demands now she could easily have obtained adequate security for the money. But she did not do so. She reposed confidence in her brother-in-law, and continued to do so, until eleven years later, when he made an assignment for the benefit of his creditors, and then for the first time set up the resulting trust.

The sixth section of the act of 1856 expressly provides, " that no right of entry shall accrue, or action be maintained, . . . . to enforce any implied or resulting trust as to realty but within five years after such contract was made or such equity or trust accrued." The present case comes precisely within the operation of this act, and there could not be a more forcible illustration of the wisdom and justice of the law than is afforded by the undisputed facts of this very case. By the sheer neglect of the plaintiff to assert her title when she should have done so, an entirely innocent person was induced to lend $4,500 upon the faith of an apparently perfectly good title as it stood on the record, and it would be rank injustice to allow her to assert it now, after eleven years delay, and six years after a beneficent and highly just law has closed upon her claim. Said Thompson, J., in Clark v. Trindle, 52 Pa. on page 495 : " The words, ' with right of entry ' at the end of the clause I esteem as material to be considered in construing it. The expression evidently means, I think, that if there be neither entry nor possession taken by the party, in whose favor the trust results, within five years after it accrues, and no acknowledgment in writing, the trust can not thereafter be asserted in law against the trustee. It means this or nothing, and we may not urge the latter, if the words are susceptible of a definite meaning."

A point was made on the argument and in the court below that as the statute was not specially pleaded it could not be interposed in defence. But the master and the court below correctly held that the statute is not merely an act of limitations which requires to be specially pleaded, but that it is a statute of repose. This has been so often held by this court that a very slight reference to the authorities will suffice. In Kenyon v. Stewart, 44 Pa. 179, Mr. Justice WOODWARD, in an opinion construing the seventh section of the act on this same subject, said : " The act of which this section is a part was planned to assure the people of greater certainty of title and to make them more secure in the enjoyment of real estate. It is founded in highest considerations of public policy. It is a statute of peace, security and repose. It is entitled therefore to a liberal construction from the courts." This language was repeated with approbation by SHARSWOOD, J., in delivering the opinion of this court in Hegarty's Ap., 75 Pa. 503.

In the case of Cochran v. Young, 104 Pa. 333, this subject was carefully and fully considered, and the quality of the act of 1856, as affecting the title to land, and not merely the remedy, was authoritatively announced. Mr. Justice CLARK, in stating several conclusions arising under the seventh section but relating to the whole act, said : " It is not to be regarded simply as a statute of limitations, it is a provision for the greater certainty of title. Statutes of limitations affect the remedy only, but this section of the act of 1856, as we have said in Warfield v. Fox, 3 P. F. S. 382; Hegarty's Ap., 25 P. F. S. 517, and McÇort's Ap., 2 Out. 33, lays down a rule of evidence which, after the lapse of five years without caveat or action at law duly pursued, makes that conclusive which before was prima facie only ; it therefore affects the title to the land and not merely the remedy for its recovery. . . . These are the deliberate conclusions of this court after a careful study of this statute, and we are unwilling to modify or change them. Individual cases of special hardship may, and doubtless will, occur, which, at first blush, may appear to bring in question the wisdom of these rulings, but we believe this construction to be in accord with the purpose and design of the statute."

Although this case arose under the seventh section of the act which protects titles to real estate under wills after five

years from the probate, yet precisely the same considerations are applicable to the sixth section which protects titles to real estate from secret trusts after five years from their inception.

The next case cited is one arising under the sixth section: Christy v. Sill, 95 Pa. 380. It was a trust arising from an alleged fraud, which was found by the jury, but the action was brought more than five years after the trust arose. Mr. Justice PAXSON delivering the opinion of this court, said: " The sixth section of the act of 1856 is not, strictly speaking, an act of limitation but rather of repose. So much was said by the present Chief Justice in Douglass v. Lucas, 13 P. F. Smith, at page 12. It is ' An act for the greater certainty of title and more secure enjoyment of real estate,' the preamble of which declares its object to be that, ' the people should acquire, hold and improve their homesteads and estates in the confidence that they will not be lost, by secret and unknown claims, or by fraud and perjury. . . . We have here an ejectment brought in 1875 for a valuable property, and a recovery upon the ground of a fraud committed in 1863 by the purchaser at a sheriff's sale. . . . There must be some point of time when a purchaser of real estate at a judicial sale shall not have his title cut up by the roots by mere parol evidence of what took place at such sale ; or by a secret trust disentombed after the lapse of years, and set up by the uncertain recollection of witnesses as to remote transactions. The act of 1856 was evidently intended to prevent titles being disturbed in this manner. It is a highly beneficial statute, and ought to be liberally construed. . . . We are of opinion that the defendants are protected by the act of 1856."

Further citations are unnecessary. Although that was a case of fraud and it was vigorously contended that the title was absolutely avoided, yet we held, that the title by force of the fraud must be set up within the five years after it arose, or it must fail under the statute. By much greater force must the title alleged in the present case, being a resulting trust merely, fail after eleven years delay.

It was also contended here and in the court below, that the plaintiff's wards being minors, the statute cannot be used against them until five years after attaining their majority. But this ground is entirely untenable under repeated decisions of this court. The act contains no exception in favor of persons under

disabilities and therefore such persons are bound by the act in the same manner as other persons sui juris. This doctrine was emphatically declared in Warfield v. Fox, 53 Pa. 382, overruling Miller v. Franciscus, 40 Pa. 335, in which a contrary ruling was made. Strong, J., said : " The plaintiffs insist that notwithstanding the seventh section of the act (1856), they are not concluded by the probate of the will because Hannah Warfield was at the time under the disability of infancy, and Mrs. Ferrel was under that of coverture, and they claim that the proviso to the act of March 26, 1785, enabled them to contest the probate at any time within ten years after the disabilities ceased, and this though they were under no disability when the act of 1856 became a law. This position, however, is untenable. The seventh section of the act applies to all persons. It includes those who are under disabilities as well as those who are not. It makes no exception in favor of minors and those who are femes covert. . . . A saving from the operation of statutes for disabilities must be expressed or it does not exist: Mobley v. Oeker, 3 Yeates, 202 ; Beckford v. Wade, 17 Vesey, 94. A law general in its nature binds minors and femes covert, and there is a multitude of statutes by which the rights of such persons are affected, though they are not specially named." Speaking of minors, married women and persons of unsound mind, he said : " Ordinarily they have guardians or committees ; if covert, they have husbands who maintain their rights, whose interest and duty it is to assert them. The danger of loss resulting from such disabilities is far more than overbalanced by the mischiefs that flow from a continuing uncertainty (it may be for thirty years) whether any claim will be asserted, especially when the claim is one only in equity, which a chancellor always requires to be promptly enforced, or when it is against the prima facies of a record. . . . While all claims against one holding adversely were restricted in duration to thirty years, claims of the kind described in the sixth and seventh sections were barred in five years without any exception for disability."

This case has been followed ever since, and is the undoubted law of the commonwealth to-day: See Pratt v. Eby, 67 Pa. 396 ; Folmar's Appeal, 68 Pa. 482 ; Hunt v. Wall, 75 Pa. 413 ; Hollinshead's Appeal, 103 Pa. 158 ; Cochran v. Young, 104 Pa. 333.

We conclude therefore that the resulting trust set up by the plaintiff in this case in favor of her wards is barred by the sixth section of the act of 1856, and that the plaintiff's bill must be dismissed.

The contention that the possession of the trustee affected by such a trust is the possession of the cestui que trust, and therefore notice to all, of the title under the trust, is hardly worth mention, as such a doctrine would entirely defeat the operation of the act in all cases.

The decree of the court below is affirmed, and the bill is dismissed at the cost of the plaintiff.