IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURG 1869.

## Douglass *et al. versus* Lucas.

1. The 6th section of Act of April 22d 1856 (Trusts) is not part of a statute of limitation.

2. When the holder of a legal title subject to a resulting trust permits the *cestui que trust* to occupy and enjoy the land as owner, he shall derive no benefit from the lapse of time.

3. The Act of 1856 contemplates that an action is to be maintained by the *cestui que trust* against the *trustee* in actual or constructive possession.

4. A bare entry by the *cestui que trust* without following possession will not prevent the bar of the Act of 1856.

5. D. held the legal title to unoccupied timber land, a resulting trust being in L., who built a shanty on it, which was occupied only for lumbering purposes. *Held,* not to be such possession as would prevent the bar of the Act of 1856.

6. Clark *v.* Trindle, 2 P. F. Smith 492, explained.

October 21st 1869.  Before THOMPSON, C. J., REED, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Jefferson county:* No. 106, to October and November Term 1869.

This was an action of ejectment commenced December 22d 1866, by Lizzie G. Douglass and others, minor children and heirs of James Douglass, deceased, against Thomas Lucas, for 404 acres of land.  On the trial, December 18th 1868, before Campbell, P. J., the plaintiffs gave in evidence receipts for the payment of the purchase-money for the land and office fees, amounting in the

[Douglass *v.* Lucas.]

whole to $122.67, and patent dated March 17th 1856, to James Douglass, their ancestor, for 404 acres and 81 perches of land, the premises in controversy.

The plaintiffs having rested, the defendant called James Moorehead, who testified: he had discovered the land to be vacant, and agreed with Douglass and Lucas to show them the vacancy for $25, each.  Lucas paid him $25; Douglass paid him $5 only of the amount; the application was made in the name of Douglass only, Douglass declaring that Lucas was entitled to one-half, but that it was made in his own name, because Lucas was in debt.  Both agreed that Douglass was to bear all the expenses of the warrant and patent; Lucas to do all the boarding, find all the hands for surveying, and after the patent should be obtained, Lucas was to pay Douglass $25 more, and each was to have one-half of the land.  When they were about making arrangements for running the division line between them, they thought that any division line that could be conveniently run, would not make a fair division of the timber; they therefore agreed that each should take some timber from the land before making the dividing line.  Douglass afterwards told witness to divide the land by a line running east and west.  There was other evidence of the agreement between Douglass and the defendant, that each was to have half of the land, and of the payment by defendant to Moorehead.

Joseph P. Lucas, a son of defendant, testified: his father claimed half the Douglass warrant, and has used it ever since; in 1854 he built a lumber shanty on it, and took about 4000 feet of lumber from it; had been lumbering on it from time to time till 1862; since then no timber had been taken off; the shanty is still there, and the defendant takes a tree whenever he wants one. Douglass said defendant had taken more than he, Douglass, had; he contended he should have half the timber.  Defendant never lived on the land; the shanty has been occupied for the purpose of taking timber; there had been no cultivation of the land; witness' brothers took timber in 1862; their families lived in the shanty with them.  There was other evidence that the shanty had been occupied under defendant for taking lumber, and when that was done the occupants left: that all the occupancy of the land was for lumbering purposes.  There was evidence also that Douglass claimed but half the land; that the defendant and he owned it in partnership, &c.

The plaintiffs submitted these points:—

"1. The evidence in this case is not sufficient to raise a resulting trust, and therefore the jury must find for the plaintiffs.

"2. The possession shown by the evidence is not sufficient to toll the Act of 1856.

"3. Under the evidence in the case, they must find for the plaintiffs."

[Douglass v. Lucas.]

The court answered the points thus :—

"1. We refuse to answer this point as requested. The evidence of the contract and the payment of the consideration rests entirely in parol. There is some evidence that the plaintiff was to take out the title, and defendant be at the expense of the surveying, and the land to belong to both. Whether the amount paid by each was equal or not, if each paid what was agreed to be his proportion of the cost and expense of procuring the title, and the land was to be the property of both, and if Douglass took out the title in his own name, it would raise a trust by operation of law.

"2. We answer this point, that actual resident possession is not necessary to toll the statute of 1856. If the defendant entered upon the land in question, if he was a *cestui que trust*, for the purpose of claiming, or if he exercised acts of ownership and dominion over the property, such as entering and cutting timber, and appropriating it to his own use, and continued such entries and acts of ownership under his claim of right, up to the commencement of this suit, it would toll the statute, although in point of fact there was no actual possession by either party.

"3. That whether the plaintiff is entitled to recover or not depends on how the jury find the facts on the evidence in the case."

The verdict was for the defendant for "the undivided half of the land."

The plaintiffs removed the case to the Supreme Court, and there assigned the answers to their points for error.

*A. L. Gordon*, for plaintiffs in error.—The possession proved would not be an answer to an action of trespass even : Wheeler *v*. Winn, 3 P. F. Smith 122 ; Brower *v*. Fleming, 1 Id. 102 ; Young *v*. Herdic, 5 Id. 172. The facts do not raise a resulting trust. There was no fraud in Douglass obtaining title ; if there had been subsequently, it would not raise a trust : Barnett *v*. Dougherty, 8 Casey 372. The entry and acts of ownership proved would not be sufficient to take the case out of the Act of April 22d 1856, § 6, Pamph. L. 532, Purd. 654, pl. 13 ; Miller *v*. Franciscus, 4 Wright 339 ; Clark *v*. Trindle, 2 P. F. Smith 492 ; Webster *v*. Webster, 3 Id. 164 ; Williard *v*. Williard, 6 Id. 119.

*W. P. Jenks* (with whom was *G. A. Jenks*), for defendant in error, referred to the Act of 1856, and the cases cited by plaintiff in error.

The opinion of the court was delivered, May 5th 1870, by

SHARSWOOD, J.—It has undoubtedly been established, under the "Act for the limitation of actions to be brought for the inhe-

ritance or possession of real property," passed March 26th 1785 (2 Sm. Laws 299), that a formal entry, *animo clamandi*, or an act of notorious dominion, by which the claimant challenges the right of the occupant, will avoid its operation: Altemas *v.* Campbell, 9 Watts 28; Hinman *v.* Cranmer, 9 Barr 40; Ingersoll *v.* Lewis, 1 Jones 212. But that is a construction required by the words of the statute: "No person shall make entry into any manors, lands, &c., after the expiration of twenty-one years next after his right or title first descended or accrued, or have or maintain any real or possessory writ or action," &c. "The statute," says Gibson, C. J., "expressly recognises the conservative properties of an entry alone, by treating it as an alternative for an action:" 9 Watts 29. But the words and the spirit of the Act of April 22d 1856, § 6 (Pamph. L. 533), do not require such a construction. "No right of entry shall accrue, or action be maintained * * * * to enforce any implied or resulting trust, as to realty, but within five years after such * * * trust accrued with the right of entry, unless such * * * trust shall have been acknowledged by writing to subsist, by the party to be charged therewith, within the said period." Had the words of this act been "no entry shall be made, or action be maintained," there would be reason for holding that the same construction should be applied. But it provides that there shall no right of entry accrue, without an acknowledgment in writing, within the five years. Nor do we understand the opinion of the present Chief Justice, in Clark *v.* Trindle, 2 P. F. Smith 492, as meaning to go the length contended for by the defendant in error. That opinion must be read with the facts of the case. The *cestui que trust* was there in actual possession when the Act of 1856 was passed, and continued to be so up to the bringing of the action. "We think," says the opinion, "that neither the words, nor by interpretation founded on the mischief to be prevented by the statute, is a case within it, where the *cestui que trust* has possession and occupancy during the period in which the statute is running." And again, "we hold that against possession in the *cestui que trust*, the bar of the statute of 1856 does not run." The question of a mere formal entry, as distinguished from entry followed by possession and occupancy, was not made, nor were any of the cases on the subject cited in the argument. Williard *v.* Williard, 6 P. F. Smith 119, is of the same character. The doctrine that entry would toll the Statute of Limitations, was evidently yielded to with great reluctance in Altemas *v.* Campbell, because of the imperative language of the act, and the general opinion of the profession, but it was attempted, in that and subsequent cases, to guard it from some of its dangerous consequences. We are not required to adopt it in the construction of the sixth section of the Act of 1856. That section, in fact, is part, not of a statute of limitations, but of "an

[Douglass *v.* Lucas.]

act for the greater certainty of title, and more secure enjoyment of real estate"—the preamble of which declares its object to be that " the people should acquire, hold, and improve their homesteads and estates, in the confidence that they will not be lost by secret and unknown claims, or by fraud and perjury." There is great reason and justice in holding that when the holder of a legal title, subject to a resulting trust, permits the *cestui que trust* to occupy and enjoy the land as owner, that he shall derive no benefit from the lapse of time. The act evidently contemplates that " a right of entry shall accrue, or action be maintained" on behalf the *cestui que trust* against the holder of the legal title, and that, therefore, the trustee should be either in actual or constructive possession. To say that a bare entry shall prevent the operation of the bar, would open the door to the admission of those " secret and unknown claims," supported by fraud and perjury, after any lapse of time and death of witnesses, or loss of papers, which the statute was aimed against ; for nothing would be required but to repeat such formal entry every five years, to keep them alive *in perpetuum.*

The evidence in the court below showed merely the erection of a lumber shanty on the tract claimed by the defendant, and the cutting and carrying away of timber, from time to time, it may be, up to 1864—two years before this suit. There was no such possession or occupancy, taking it all to be true, as ought to save the bar arising from the lapse of time. A mere temporary occupancy, for the purpose of taking off timber, by one having no right of possession, is not such an actual possession as defeats the constructive possession which the law casts upon the owner : per Agnew, J., in Brewer *v.* Fleming, 1 P. F. Smith 115 ; Wheeler *v.* Winn, 3 Id. 122. We think, therefore, that there was error in the answer of the learned judge below, to the second and third points of the plaintiffs. In regard to the answer to the first point, there certainly was evidence to submit to the jury, which, if believed, would have authorized them to find a resulting trust, and there was, therefore, no error in refusing to affirm that point.

Judgment reversed, and *venire facias de novo* awarded.