## Hoyt's Estate.

*Life estate—Remainderman—Improvements.*

1. Where a testator appoints his wife and a daughter executors of his estate, and gives to his wife all his real and personal property for life, and it appears that the principal real asset was a licensed hotel property, and the principal personal asset shares of stock of a corporation, and that the total income was not more than sufficient to support the wife, an elderly woman, comfortably, the representative of the widow, and the daughter, cannot be surcharged after the widow's death with the whole of the proceeds of the shares of stock which had been used for repairs to the hotel property, absolutely necessary to maintain the property and preserve its license.

*Wills—Construction—Devise—Legacy.*

2. Testator gave all his real and personal property to his wife for life. He then directed as follows: "After her death all my property I want sold and the money divided among my heirs equally if E. (a daughter) stays at home and takes good care of her mother I give her the house we now live in furnished as it is for her share of my estate." *Held,* from a proper construction of the will, and without considering extrinsic evidence as to the respective values of the house and the residuary estate, that the daughter was entitled not only to the house specifically devised to her, but also to a share in the residuary estate.

Argued April 16, 1912. Appeal, No. 40, Jan. T., 1912, by Wm. T. S. Hoyt, et al., from judgment of Superior Court, Oct. T., 1911, No. 214, affirming decree of O. C. Clearfield Co., No. 3250, sustaining exceptions to auditor's report in Estate of Milo Hoyt. Before FELL, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Appeal from judgment of the Superior Court.

In the Orphans' Court A. O. SMITH, P. J., filed the following opinion:

The first exception is to the action of the auditor in surcharging accountants with $1,111.71 for which credit was claimed in the account filed as expenditures by

Sarah Hoyt, deceased, executrix and life tenant, for permanent improvements and additions to the real estate of the decedent. The learned auditor surcharges accountant with said sum on the ground that no authority was given the life tenant by the remaindermen for making those improvements, although he finds as a fact that they were made necessary "in order tồ make the property suitable as a hotel property and also the changes about the bar and bar room were necessary in order to comply with the rulings of the court." No authority is cited to sustain his position that no part of these improvements are chargeable to the estate or against the remaindermen. The auditor contents himself with the statement that "there was no authority in law under the will or from the remaining heirs for such an improvement, and in the absence of such your auditor finds that this item can not be a charge against the estate." The learned auditor also fails to set out fully his findings of fact relating thereto. From the papers in the case the evidence offered we believe the following facts are shown and are necessary to a determination of the legal question involved.

First: That by the will of Milo Hoyt, deceased, his widow, Sarah Hoyt, was entitled to the entire income of both real and personal estate, among which and as the principal asset of the estate was a hotel property valued at his death at fifteen thousand dollars.

Second: That the life tenant's income from the entire estate was about twelve hundred dollars gross per annum, and forty dollars per month or four hundred and eight dollars net per annum.

Third: That the parties, as executors, treated the interest of the widow, Sarah Hoyt, as life estate and she handled the property from the death of her husband, in 1896, until her own death, in 1907, as a life interest, without interference from either her co-executor, her son Allen, who died in 1903, or from her other co-executrix, the accountant, Edna V. Williams, who survived her at

her death October 19, 1907. That during her life tenancy, and in 1904, because of demands made upon her for improvements by the tenant of the hotel property required at the instance of the court granting the license, she made certain improvements and betterments to the hotel property, as follows: Steam heat plant, $696.27; improvement on bar room, $277.90; outside flue, $46.75; ice house, $90.00; packing and shipping of bar, $2.80. That these improvements so made were necessary in order to secure a continuance of the license of the property and in order to obtain the rental of sixty dollars per month. That they were permanent in character and enhanced the value of his estate to the remaindermen.

Fourth: That Sarah Hoyt, the life tenant, was 65 years of age when Milo Hoyt died in 1896, and was therefore 73 years of age when these improvements were made, three years before her death in 1907.

Fifth: That to have made said improvements at her own expense would have taken practically her entire net income from the time when made in 1904, until her death and left her nothing for maintenance.

Sixth: That among the personal property of Milo Hoyt, deceased, the life tenancy in which was bequeathed to Sara Hoyt, were forty-one shares of Osceola Water Supply Company stock. That in order to make the improvements above mentioned the said Sarah Hoyt used the said forty-one shares of Osceola Water Supply Company stock as a collateral security for a loan from the First National Bank of the amount of $1,111.71, and the said loan remained in that shape until after her death, when the water stock was sold by Edna V. Williams, surviving executrix, and the loan paid off and credit claimed by said accountant for said sum in her partial account filed, which credit became the subject of an exception and was disallowed by the learned auditor.

Seventh: That there is nothing in the testimony to show that any portion of the said $1,111.71 was used by the present accountant or wasted in any way by her,

but was used as aforesaid by the life tenant, Sarah Hoyt, as an improvement and betterment of the hotel property, one of principal assets of the estate, from which she was to derive an income as the principal object of testator's bounty.

Under these facts should this accountant or her deceased co-executrix Sarah Hoyt's estate, be surcharged with the said sum? It is manifestly a great injustice to the accountant and would moreover be a great injustice to the estate of Sarah Hoyt if that estate were surcharged, although there is nothing in the testimony to show that it is worth anything. The learned auditor seemed to think that this money could be properly expended by the life tenant under the law of this state, without authority so to do from the remaindermen. We do not think this is the law and no authority to sustain such a position has been brought to our attention by the counsel for the remaindermen, except Datesman's Appeal, 127 Pa. 348, in which dictum appears at the bottom of page 359 as follows: "There was nothing to show that the improvements were made with the consent of the remaindermen and it is settled law that the life tenant cannot of his own motion improve the remaindermen out of their estate. Where the latter consent to improvements for the mutual benefit of the joint estate and the property is afterwards sold to promote the interests of both, equity would perhaps allow the life tenant a reasonable compensation for the value of the improvements." In the same connection and in the same opinion it would appear that the improvements and repairs made were of a trifling nature, so much so as not to be included in any finding of fact by the auditor. In that case the money for distribution was proceeds of a sheriff's sale of the entire estate in lands and the claim of the life tenant was for repairs and improvements made, but of such trifling and unimportant character that that would seem to be the real ground of refusal of the claim.

In this estate the improvements made are all of a permanent character and enhanced the value of the estate, both to the life tenant and to the remaindermen. Neither could it be said to have in any way "improved the remaindermen out of their estate." The hotel property was valued at fifteen thousand dollars at the death of Milo Hoyt. It is apparent that the improvements to an amount expended of $1,100.00 was not taking anything from the remaindermen but to keep the estate in such condition as to make it of like value when possession came to them. In Griffith's Estate, 12 Pa. C. C. R. 614, the entire amount of the betterment were charged to the remaindermen, the life tenant being 70 years of age. Betterments and improvements of a permanent nature are sometimes apportioned between the life tenant and remaindermen, as in Baker v. Esbin, 1 Chester County, 293; Davenport's Estate, 10 Pa. D. R. 121. Permanent improvements such as sewer attached to house, are chargeable to remaindermen, as in Van Dusen's Estate, 1 Pa. D. R. 156; Tragbar's Estate, 2 Pa. D. R. 407; Bradley's Estate, 3 Pa. D. R. 359.

Under the circumstances in this case it is clearly equitable that the burden of these improvements should be sustained by the remaindermen. The widow and life tenant was the principal object of the testator's bounty. To have her pay for these improvements would have left her without income at the close of her life when helpless and most in need of income. To surcharge this account with said sum would be manifestly inequitable and unjust. There is no allegation that she had the money or could have used it in any way. She was in fact the second principal object of testator's bounty. As the youngest and favored child at home the will of decedent shows that she was charged with the burden of attendance upon her mother in her old age. The Orphans' Court is a court of equity and seeks to do justice. The injustice and inequity of a surcharge against the accountant, Edna V. Williams, under the whole circumstances of

this case, are so flagrantly obvious that it is hard to understand how the brothers and sisters of the accountant could bring themselves to maintain such a position, even though the law might favor them.

As we look at it, neither the law nor the facts sustain the surcharge and the exception is therefore sustained.

The fourth exception relates to the report of the auditor in failing to distribute to Edna V. Williams one-eighth of the net balance for distribution, "she claiming as a daughter of the decedent to share in general bequest of the decedent to all of his heirs equally." The will of Milo Hoyt, deceased, is drawn in his own hand writing. He was not an educated man and his will is inartificially drawn, is without proper grammatical expression and punctuation. To understand the controversy relating to this exception the will is quoted verbatim as follows:

"Osceola, Clearfield Co., Pennsylvania, July 7, 1893.

I make

this my last will

I give and devise and bequeath my estate and property both real estate and persona-to my wife Sarah I give all my income of both real estate and personal property notes and mortgages and stocks I may have at my death after her death I give Sherman Hoyt the library my watch I give to Emary Hoyts son Milo as a gift for his name all the property I may have at that time or after my death that dont bring an income I want sold and the proseeds put on interist as soon as it can be done to advantage and my wife Sarah to receave the proseeds after her death all my

the money

property I want sold and A divided among my airs equally if Edna V. Hoyt stays at home and takes good care of her mother I give her the house we now live in on the cor of Sarah and Lingle St furnished as it is for her share of my Estate the shares I hold in the building and loan in Osceola may be kept up at the option of the Executor and kept insured as is now.

I apoint A V Hoyt of Philipsburg sivil Engineer and Edna V Hoyt and Sarah her mother executors of this will Milo Hoyt (SL)          in witness thare of I have signed and sealed and published ane declaired this instrument as my will at Osceola mill July 11, 1893.

   J. W. McMullin

| W. P. Vaughan"

The learned auditor held that by her acceptance of the specific devise she barred herself from taking a share as a daughter under the general distribution clause preceding the specific devise. Testimony was taken before the auditor, going to show that the value of Milo Hoyt's estate at the time of his death must have been in the neighborhood of eighteen to twenty thousand dollars, including the house specifically devised to Edna V. Williams on condition that she stay with her mother, and that that house was worth only two thousand dollars. This testimony was taken to show the facts and circumstances as some aid in getting at the intention of the testator. It was taken under objection but admitted by the auditor and, as shown by the report of the learned auditor, was considered by him. The property which is the subject of the specific devise was valued at two thousand dollars, while an one-eighth share of Edna V. Williams in the entire estate would considerably exceed that amount, even at the valuation at the time of the death of Milo Hoyt and would show a still greater difference in value at this time or at the time of the life tenant's death.

There is abundant authority for the principle that these facts and circumstances may be taken into the consideration in construing this will: Rewalt v. Ulrich, 23 Pa. 388, Postlethwaite's Appeal, 68 Pa. 477. We believe, therefore, that the testimony offered, showing the value of the estate, is a proper subject for our consideration in construing this will.—Even without such testimony, however, in consideration of the general principles of construction of wills, we are of opinion

that the learned auditor erred in disallowing Edna V. Williams to share in the general distribution. The general principles applied to the construction of 'wills ought to be kept in mind in construing this will. These are (1) The cardinal rule of construction is to seek the intent of the testator, which is to be gathered from the four corners of the will taken as a whole. In other words the whole scheme of the will and not the words of any particular devise should be considered: Blackmore v. Hickman, 81* Pa. 288; Miller's Appeal, 113 Pa. 459. (2) It is said that the question in expounding a will is not what the testator meant but what is the meaning of his words: Hancock's Appeal, 112 Pa. 532. (3) Words can only be supplied when necessary to give effect to the most unquestionable purpose of the testator as shown in all parts of his will. If such intent be clearly expressed or necessarily implied in order to carry out the whole scheme of the will, words may be transferred or supplied but not otherwise: Varner's Appeal, 87 Pa. 422; Zerbe v. Zerbe, 84 Pa. 147. (4) In case of doubt the construction to be adopted is that which most nearly conforms to the interstate laws. This rule is said by the courts to be a just and salutary rule: Suplee's Appeal, 16 W. N. C. 378; Finney's Appeal, 113 Pa. 11; Grim's Appeal, 89 Pa. 333. (5) Where a devise is to heirs or persons as a class to exclude one of that class therefrom will require that the intention of the testator so to do be clearly manifested. Mere negative words are not sufficient to exclude as heir or next of kin, there must be an actual gift to some other definite object: Hitchcock v. Hitchcock, 35 Pa. 393; Bruckman's Estate, 195 Pa. 363; Sigel's Estate, 213 Pa. 14. (6) Where a will indicates that a certain devisee shall be the principal object of testator's bounty, courts in construing such will will not allow the distributive share of such favored devise to be reduced by expressions having an ambiguous reference to it: Biddle's Estate, 28 Pa. 59; Penrose's Appeal, 102 Pa. 448;

Watson v. Smith, 210 Pa. 190.  (7) Conditions subsequent in a will or codicil divesting or reducing a vested estate are not regarded with favor in the construction of wills, and when an estate has once vested the law will not permit a doubtful clause in a will to defeat such vested estate: Jackson's Estate, 179, Pa. 77; Dean v. Winton, 150, Pa. 227.  (8) The residue of an estate in testamentary language means whatever is not specifically devised or bequeathed.  It is wholly immaterial in what portion of a will a clause disposing of such residue may be.  Its operating effect is that of a residuary clause disposing of that which had not in any other portion of the will been specifically devised or bequeathed: Willard's Estate, 68 Pa. 327.

Applying these general principles of this will what can be fairly said to be the meaning of the testator's words used therein?  It is manifest that the first principal object of testator's bounty was the welfare of his widow.  To secure that he gave her the income of his entire estate during the balance of her life.  To further secure her comfort he provided that his youngest child, a daughter, Edna V. Hoyt, the only one unmarried and living at home, should have an inducement to stay at home and help take care of her mother during the balance of her life.  Edna V. Hoyt, now Williams, can fairly be said therefore, to have been the second principal object of testator's bounty in that she was to be rewarded, if she stayed at home and took care of her mother, by getting the house and furniture which then constituted their home.  This devise of the house and furniture to her was contingent upon her performance of the condition named.

It was not a mere bounty but was given her contingent upon her performing a valuable service and therefore was a gift for a consideration.  It did not vest until performance and until the death of her mother, the life tenant.  The learned auditor in discussing this part of the will seemed to consider that she had obtained the

specific devise on the death of her father, whereas the very contrary is true, for had she not performed the services she never could have gotten the title to the homestead. The residuary devise to the children upon the death of the mother is wholly unconditional. It passed or vested at the death of Milo Hoyt the decedent. It was not dependent upon the fact, circumstances or condition. How then can it be said, as a fair interpretation of this will, that he intended by her fulfilling the conditions and earning the specific bequest to be disinherited as to the residuary of his estate. The law, as above stated, does not favor such disinheritance and will only so construe wills where absolutely necessary to carry out the general scheme of the will as shown by the wording thereof. To exclude her from the residuary legacy is to disinherit her, for it is clear that the will intended that she should earn the specific devise of the house. The words used in connection therewith "for her share of my estate" do not clearly manifest the intention of disinheritance. They can equally be construed as meaning that the house and its furnishings were to be excepted from the prior clause directing a sale and subsequent division among the heirs. In other words, if she earned it as a condition precedent, it was to pass to her specifically and unconverted. These words are not as forceful as words of disinheritance in a residue as the words used in Sigel's Estate, 213 Pa. 14. There two specific bequests were followed by the words "and no more" yet these words were construed as not taking these specific legatees out of the class to whom the bulk of his estate had been devised. So also in Fahnestock's Estate, 147 Pa. 327, a specific legacy of two thousand dollars each to two nephews were declared to be "in full of all interest and distributive share" in an estate. These two legatees, however, were part of a general class in another or residuary clause of the will and were held to participate in such general residue.

In Bruckman's Estate, 195 Pa. 363, the testator in one clause declared that he would not give his niece Mary Miles one cent and in other clauses devised certain real and personal property to his wife and sister, but left a large portion of his property, consisting of real estate undevised. On distribution of said undivided portion Mary Miles was allowed to participate.

The class of cases relied on by the learned counsel for the heirs in this estate are well illustrated in McGovern's Estate, where the words of disinheritance used are clear in expression and intent. In that case, as a part of the residuary clause to a class, the testator by her will said "in no event is M, or her three children and J. or her two children to receive any portion of my estate in any shape or form." So also in Everitt's Estate, 195 Pa. 450, testator in his will directed his executor to transfer to his sister M. a note of M.'s son and followed this with the direction that "this shall be considered as the only share she is to have out of my estate, 195 Pa. 450, testator in his will directed his expression of intent. In the case in hand the language is not clear, for the two clauses are wholly inconsistent and therefore the will is ambiguous. Both classes must be construed as standing, if possible, and whatever there may be of ambiguity or lack of clearness in expression must be construed in favor of Edna V. Williams. When therefore, we take into consideration the value of his estate at the time of his death, as shown by the testimony taken, it is stronger proof that he did not intend the words used to have the meaning claimed for by the learned counsel for the other heirs.

The first and fourth exceptions are sustained.

The Superior Court filed the following opinion:

The two main questions raised by the assignments of error and discussed on the argument of this appeal are (1) as to the credit of $1,111.71 claimed by the accountant for expenditures made for permanent improvements

and additions to the real estate of the testator; (2) as to the construction of his will. After due consideration of the evidence, the facts deducible therefrom, the questions of law arising from the facts, and the arguments of counsel, we find ourselves divided in opinion upon each of these questions. A majority of us would affirm the decision of the first question upon the findings of fact, and opinion of the learned judge, below, but some of the number concurring in that conclusion entertain a different view as to the other question. There is the same diversity of opinion as to the second question, but those of us who would affirm the decision of that question, are of the opinion that the conclusion reached by the learned judge is right, and is well sustained by his reasoning in support of it, leaving out the consideration the evidence of the value of one-eighth share of the entire estate as compared with the value of the land specifically devised on condition to the appellee. It is therefore unnecessary to discuss the admissibility of that evidence in aid of the construction of the will. With this qualification, the decision of each question and the opinion of the learned judge below in support of it are concurred in by a majority of this court.

The decree is affirmed, and the appeal dismissed at the costs of the appellant.

*Error assigned* was judgment of the Superior Court.

*Frank Fielding* and *Oscar Mitchell,* for appellants.

*W. C. Miller,* with him *Harry Boulton,* for appellees.

PER CURIAM, May 13, 1912:

On both questions involved in this appeal, we concur in the conclusion reached by the Superior Court.

The decree is affirmed at the cost of the appellant.