UNITED STATES of America

v.

Joseph Anderson SCHOFIELD, 3rd, W. Bradley Ward, Administrator D.B.N. C.T.A. of the Estate of Lemuel B. Schofield, Deceased, Liberty Real Estate Bank and Trust Company, a Pennsylvania corporation, and Marvin Comisky, Guardian of Joseph Anderson Schofield, 3rd, and Premises in Schuylkill Township, Chester County, Pennsylvania, commonly known as the Anderson Farm, consisting of 131.452 acres.

Civ. A. No. 20977.

United States District Court
E. D. Pennsylvania.

Dec. 4, 1959.

See also 175 F.Supp. 654.

Richard Reifsnyder, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Lewis M. Stevens, Marvin Comisky, Isaac C. Sutton and W. Bradley Ward, Philadelphia, Pa., for defendants.

VAN DUSEN, District Judge.

For the purposes of defendants' motion for summary judgment, it must be assumed that a legal life tenant expended sums for permanent improvements [1] on the real property (a farm) on which he had a life estate, in fraud of creditors, during the period 1947 to 1955 (see Exhibit A to amendment to complaint, being Document No. 13). This suit to recover income taxes becoming due during the life tenant's lifetime, by impressing a lien on the above land now held by the remainderman to the extent that the value of the land with these improvements exceeded the value of the land without such improvements at the time of the life tenant's death on July 3, 1955, was instituted on July 2, 1956.[2]

I. Contention that 12 P.S. § 83 [3] is a bar to recovery for permanent improvements paid for [4] prior to July 2, 1951.

Plaintiff contends that the use of money by the life tenant to pay for the improvements is equivalent to a void transfer of land by him and, hence, no "implied or resulting" trust is being enforced in this action.[5] However, the cases [6] involving transfer of land by a debtor in fraud of creditors are not in point since the life tenant did not convey his life estate [7] but converted his assets fraudulently into an increased value of the land as of the time of each permanent improvement. Although the question is not free from doubt, the reasoning of Silliman v. Haas, 1892, 151

---

1. The Supreme Court of Pennsylvania has said that "ordinarily the cost of permanent improvements" would not be paid by the life tenant but by the remainderman (see In re Wright's Estate, 1912, 234 Pa. 580, 582, 83 A. 427, 428, and In re Hoyt's Estate, 1912, 236 Pa. 433, 437, 84 A. 835), and that "The presumption is in favor of the tenant for life until the contrary appears" (see Lynn's Appeal, 1857, 31 Pa. 44, 46).

2. See opinion of June 21, 1957, reported at D.C., 152 F.Supp. 529.

3. This statute of 1856 contains this language: "No right of entry shall accrue, or action be maintained * * * to enforce, any implied or resulting trust as to realty, but within five years after * * * such * * * trust accrued * * *: Provided, That as to anyone affected with a trust, by reason of his fraud, the said limitation shall begin to run only from the discovery thereof, or when, by reasonable diligence, the party defrauded might have discovered the same; * * *." 12 P.S. § 83.

4. The date of a conveyance in violation of 39 P.S. §§ 351–363 would be the date the life tenant paid for the improvement, thereby depleting his assets, unless he had approved the work and in all respects made himself personally liable for the improvement prior to such payment.

5. See pp. 1–8 of Document 37 and attached letter of 11/4/59. Defendants' position is set forth at pp. 1–6 of Document 38.

6. The cases relied on by plaintiff are Dunn v. Truitt, 1871, 8 Phila. 27, and Tate v. Hoover, 1942, 345 Pa. 19, 38, 26 A.2d 665.

7. In Silliman v. Haas, 1892, 151 Pa. 52, at page 57, 25 A. 72, the court said:
   "It is not the case of a debtor conveying his land to another in fraud of his creditors * * *.

   *      *      *      *      *

   "It must be constantly borne in mind that this is not the case of a conveyance of the land in dispute, by the former owner for the purpose of defrauding his creditors. In such a case, if the fact of the fraud is true, the conveyance passes no title, and the grantor remains the actual owner, and any lien creditor can sell the land as the property of the fraudulent debtor, and acquire his title thereto. Such a title has no element of trust about it. The sale of the debtor's title passes all of the title the debtor had, and the creditor can make out his case by proving the fraudulent character of the previous conveyance. * * * Now his creditors, while they are at liberty to assert the title in him for their benefit, must do it in the method that he would be obliged to pursue, to wit, by the application of the doctrine of resulting trust * * *." 151 Pa. at pages 62, 63, 25 A. at page 75.

Pa. 52, 57, 62–63, 65–66, 25 A. 72,[8] relied on by defendants, appears to require the holding that a trust of the type contemplated by 12 P.S. § 83 became enforcible against the land, in which the deceased debtor had a life estate, when these improvements were made.[9] To the extent that the alleged permanent improvements increased the value of the remainder interest,[10] the defrauded creditors have no remedy by reaching the life estate alone.

■ The cases, cited by plaintiff, of Rayman v. Morris, 1949, 361 Pa. 583, 65 A.2d 397, and Citizens Deposit & Trust Co. of Sharpsburg v. Citizens D. & T. Co., 1939, 136 Pa.Super. 413, 7 A.2d 519, do not support the plaintiff's claim that the statutory period was tolled, since the plaintiff, who is asserting the implied or resulting trust, was not in possession during or after the life tenancy. This record makes clear that the remainderman had no part whatever in any alleged fraud of the life tenant. See memorandum opinion of July 28, 1959, 175 F. Supp. 654, at pages 655, 656, and cf. Proctor v. Sagamore Big Game Club, 3 Cir., 1959, 265 F.2d 196, 202.

■ Also, plaintiff's contention that the statutes of limitations contained in 26 U.S.C.A. § 276(c) (1939 I.R.C.) and 26 U.S.C.A. § 6502 (1954 I.R.C.) make 12 P.S. § 83 inapplicable is rejected. Plaintiff has no lien on the property in question, since assessment and demand were made after the death of the taxpayer-life tenant. Because any lien in favor of plaintiff attached after the life tenant's death and, hence, at a time when he had no interest in the real estate, any rights of the Government in the property must be determined under state law. See Commissioner of Internal Revenue v. Stern, 1958, 357 U.S. 39, 45, 78 S.Ct. 1047, 2 L.Ed.2d 1126; United States v. Bess, 1958, 357 U.S. 51, 55, 78 S.Ct. 1054, 2 L.Ed.2d 1135; cf. Central Surety & Insurance Corp. v. Martin Infante Co., Inc., 3 Cir., 272 F.2d 231. In Commissioner of Internal Revenue v. Stern, supra, 357 U.S. at page 45, 78 S.Ct. at page 1051, the Supreme Court of the United States has held that, where proceedings are instituted for the collection of federal income taxes becoming due during the life period of a deceased taxpayer after his death and against sources other than his estate, "the existence and extent of liability should be determined by state law." The court used this language at page 47 of 357 U.S., at page 1052 of 78 S.Ct.:

"The Government's substantive rights in this case are precisely those which other creditors would have under Kentucky law. The respondent is not liable to the Government because Kentucky law imposes no liability against respondent in favor of Dr. Stern's other creditors."

The Pennsylvania appellate court cases construing 12 P.S. § 83 make clear that it creates a substantive rule of law governing title to land and does not merely take away an otherwise existing remedy. See Way v. Hooton, 1893, 156 Pa. 8, 26 A. 784, and First Pool Gas Coal Co. v. Wheeler Run Coal Co., 1930, 301 Pa. 485, 152 A. 685; cf. Proctor v. Sagamore Big

---

8. In this case, the court, after distinguishing the reasoning of the cases in footnote 6 (151 Pa. at page 55 shows that the Dunn case was called to its attention by counsel) with the language quoted above in footnote 7, said at page 66 of 151 Pa., at page 76 of 25A.:

"The same line of reasoning is applicable in case of a resulting trust growing out of the payment of the purchase money of land by one person where the title is taken by another, and we know of no reason why the same statute does not defeat it in the same time."

9. When the debtor made permanent improvements to the land in which he only held a life interest, it is a reasonable inference that he was making a present gift to the remainderman of a future interest in the improvements. The remainderman, apparently, acquired an interest in the improvements when they were made that would entitle him to prevent the life tenant from removing or destroying them.

10. See cases cited in footnote 1, supra.

Game Club, supra, 265 F.2d at page 202. In Way v. Hooton, supra, the court used the following language at pages 20–21 of 156 Pa., at page 786 of 26 A.:

"In the case of Cochran v. Young, 104 Pa. 333, this subject was carefully and fully considered, and the quality of the act of 1856, as affecting the title to land and not merely the remedy, was authoritatively announced. Mr. Justice Clark, in stating several conclusions arising under the seventh section, but relating to the whole act, said: 'It is not to be regarded simply as a statute of limitations, it is a provision for the greater certainty of title. Statutes of limitations affect the remedy only, but this section of the act of 1856, as we have said in Warfield v. Fox, 53 Pa. 382; Hegarty's Appeal, 75 Pa. 503, 517, and McCort's Appeal, 98 Pa. 33, lays down a rule of evidence which, after * * * pursued, makes that conclusive which before was prima facie only. It therefore affects the title to the land, and not merely the remedy for its recovery. * * * These are the deliberate conclusions of this court after a careful study of this statute, and we are unwilling to modify or change them. Individual cases of special hardship may, and doubtless will, occur, which, at first blush may appear to bring in question the wisdom of these rulings, but we believe this construction to be in accord with the purpose and design of the statute.'

Although this case arose under the seventh section of the act, which protects titles to real estate under wills after five years from the probate, yet precisely the same considerations are applicable to the sixth section, which protects titles to real estate from secret trusts after five years from their inception." [11]

Under similar circumstances, the Federal Courts have recognized that state statutes placing limitations upon the existence of a right in order to secure repose of land titles are limitations on the Federal government. Cf. Fink v. O'Neil, 1882, 106 U.S. 272, 1 S.Ct. 325, 27 L. Ed. 196; Custer v. McCutcheon, 1931, 283 U.S. 514, 51 S.Ct. 530, 75 L.Ed. 1239; United States v. Harpootlian, 2 Cir., 1928, 24 F.2d 646; United States v. Ryan, D.C.D.Minn.1954, 124 F.Supp. 1, 10.[12] As pointed out in the Custer case at page 519 of 283 U.S., at page 532 of 51 S.Ct., "The plaintiff is not precluded from bringing an action" against the estate of the deceased taxpayer, but merely from reaching the land of a person other than the taxpayer because of a state policy concerning land titles.

For the foregoing reasons, paragraph 1 of the motion for summary judgment will be granted and an appropriate order may be submitted by defendants.

II. Contentions that jeopardy assessments and fraud penalties should not be considered liabilities of the deceased life tenant in years prior to their assessment for purposes of determining his alleged insolvency under § 4 of the Uniform

11. The court used this language at page 489 of 301 Pa., at page 687 of 152 A. of the First Pool Gas Co. case, supra:

"In the former case the statute merely applied to the remedy, the claim remains and may be revived by a new promise; while in the latter, there is no right of action unless asserted in accordance with the provisions of the statute. See Freeman v. Lafferty, 207 Pa. 32, 56 A. 230; Huffnagle v. Blackburn, 137 Pa. 633, 641, 20 A. 869; Christy v. Sill, 95 Pa. 380. The act of 1856 is one for the greater certainty of titles (Barry v. Hill and Gillespie, 166 Pa. 344, 360,

31 A. 126; Douglass v. Lucas, 63 Pa. 9, 13) and is a statute of repose which need not be specifically pleaded. Way v. Hooton, 156 Pa. 8, 26 A. 784; see, also, American Products Co. of Pennsylvania v. Franklin Quality Refining Co., 275 Pa. 332, 336, 119 A. 414; Mason-Heflin Coal Co. v. Currie, 270 Pa. 221, 113 A. 202."

12. In the Ryan case, the court said at page 10 of 124 F.Supp.: "A state law affecting the title to property must be followed, and is binding upon the United States."

**336**

Fraudulent Conveyance Act (39 P.S. § 354).

In view of the conclusion reached under I above, it may not be necessary to rule on these contentions, since defendants may concede the life tenant's insolvency as of July 2, 1951. The parties are trying to agree on a stipulation covering, among other matters, the assets and liabilities of the life tenant at the time of each improvement. After this stipulation has been filed or the record has been otherwise supplemented on this subject, rulings on paragraphs 2 and 3 of the motion may be requested from the pre-trial judge or secured from the trial judge.