## N. S. Davis, Appellant, v. A. C. Hawkins.

*Statute of limitations—Constructive fraud.*

In cases of constructive fraud the statute of limitations begins to run from the date of the act committed.

*Evidence—Fraud—Sale of land—Statute of limitation.*

In an action for deceit to recover moneys alleged to have been wrongfully obtained from plaintiff, the evidence was in effect that defendant had a power of attorney from the owner of certain lands to lease and manage the property and collect the rents, but with no power to sell. Plaintiff proposed to purchase the lands, and had full knowledge of the extent of defendant's agency. After the negotiations had been begun, defendant told plaintiff that the owner had authorized him to sell the land, but he showed plaintiff no written authority. The sale was then concluded and plaintiff paid to defendant portions of the purchase money, but at very irregular intervals, and never tendered the balance due. *Held,* that there was no such fraud on plaintiff as prevented the running of the statute of limitations against his claim.

*Competency of witness.*

In the above case defendant was an entirely competent witness, as the thing in controversy was a transaction between the parties, both living, and the owner's representatives were not parties or privies to the action, and would not be affected in any way by the result of it.

Argued May 1, 1894. Appeal, No. 40, Jan. T., 1894, by plaintiff, from judgment of C. P. McKean Co., Feb. T., 1890, No. 240, on exceptions to report of referee. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Assumpsit to recover moneys alleged to have been obtained by false representations.

The referee, Robert F. Glenn, Esq., found the facts as follows:

"1. That on July 8, 1877, R. W. Mackey was the owner of what was known as the 'Funk well,' together with five acres of ground on which said well was located, situated in Oilcreek township, Venango county, Pennsylvania.

"2. That claiming power of attorney to do so, A. C. Hawkins, on said date, receipted to N. S. Davis, plaintiff, for five hundred dollars, 'being on account of well known as the Funk No. 1 and the five acres on which it is situated, the terms being as follows, viz: $500 cash, $300 on Sept. 17, $350 Jan. 1, 1878, and $350 on July 1, 1878, total amount being $1,500,' signing said receipt 'R. W. Mackey per A. C. Hawkins, Atty. in fact.'

"3. That A. C. Hawkins, defendant, received from N. S. Davis, plaintiff, and receipted therefor on the same account: $200 Sept. 17, 1877; $100 Oct. 13, 1877; $200 July 4, 1878; $200 June 10, 1879; $100 Oct. 27, 1879. Signing all said receipts 'R. W. Mackey per A. C. Hawkins, Atty.'

"4. That on July 8, 1877, and for some time prior thereto, A. C. Hawkins held a power of attorney made by R. W. Mackey, by the terms of which he, Hawkins, was authorized ' to collect, sell and receipt for all money arising from sales of oil, and to collect and receipt for all rents due or which may become due on property owned by me in Venango county, to rent said property and generally to transact all business connected with the management of property owned by me in said county,' which said power of attorney remained in force until the death of Mackey, Jan. 1, 1879.

5. That by virtue of the authority contained in said power of attorney, he, Hawkins, collected for his principal, R. W. Mackey, $1,211.40, and expended on all acccounts, including personal expenses, as claimed by him, and for a part of which he holds receipts, $727.47.

"6. That after the death of Mackey and the revocation thereby of his power of attorney, he, Hawkins, received from sale of royalty oil from Mackey land, $424.52, and $300 from Davis on account of the 'Funk well' sale. That he expended during said time on all accounts, including personal expenses, $349.21.

" 7. That the total amount received by Hawkins, during his administration, exclusive of Davis, was $1,635.92. And his total expenditures, exclusive of $300, claimed to have been paid Mackey, in cash, at Long Branch, were $1,076.68. Of the amount expended $952.77 was used in paying taxes and redemptions. The balance, $123.91 was personal expenses, except a fee of five dollars paid Dodd & Lee, attorneys, and $27.00 paid Heydrick Brothers for surveying.

" All receipts are for royalty oil sold, with the exception of $500 received from O. B. Park on 'account Farrel acre,' and for which no further explanation is offered. The excess of receipts over expenditures on account of said property during the time Hawkins claims to have had it in charge, exclusive of receipts from Davis, is $559.54.

" 8. That the defendant, Hawkins, had no written authority from Mackey to make sale to Davis, plaintiff, of the land mentioned; neither is there any competent evidence that Mackey ever knew of the sale or the proposed sale, or had any knowledge that the sale had been made.

" 9. That after the death of Mackey, Hawkins collected from Davis $300 on account of the alleged sale of land to him, without any authority from any one to do so, signing receipts therefor ' R. W. Mackey per A. C. Hawkins, Atty.,' and knowing that the heirs of R. W. Mackey at the time disclaimed all title to the land.

" 10. That A. C. Hawkins told N. S. Davis that he had a power of attorney to sell the land, and continued to represent that he had such authority, by signing receipts for the purchase money as attorney, and by assertions to that effect, until the year 1886, when Davis first discovered that he did not have such power of attorney.

" 11. That Hawkins did not expend the money, received from Davis, in the care of Mackey's property, except to claim to use the whole thereof, together with a considerable amount of funds belonging to the estate, to pay himself, for receipting to the pipe line company for twenty-one small royalty balances, and to O. B. Park for five hundred dollars, in three payments, and for paying taxes, and for two other items of expense on the properties in his charge, to the amount of a little more than one half of his receipts—all expenses, including personal, being paid out of the funds in his hands.

"12. That Hawkins never informed the representatives of R. W. Mackey, deceased, of the alleged sale to Davis; nor did he offer to account to them in any way for the proceeds thereof, until more than ten years after the death of his principal, and more than five years after he had given up connection with the estate.

"13. That the executors of R. W. Mackey, deceased, through J. L. Connely, repudiated the contract made by Hawkins with Davis, as soon as they learned of it; denied his right to make such contract, and refused at all times to recognize any claim of Davis to have its terms complied with on their part.

"14. That Davis, upon learning that Hawkins had no authority to sell the land, and being notified that he would be held responsible by the Mackey estate as a trespasser thereon, abandoned the property.

"15. That Judge J. L. Connely was the duly authorized agent or attorney in fact, for the executors of the Mackey estate, in the matters in which he acted with relation to the said estate."

The referee found for plaintiff for the sum of $2,422.45.

Exceptions to the referee's report were sustained in an opinion by MORRISON, J., for reasons stated in the opinion of the Supreme Court, and judgment was entered for defendant.

*Errors assigned* were in sustaining exceptions, quoting them, and in entering judgment as above.

*C. Heydrick, E. L. Keenan* and *C. I. Heydrick* with him, for appellant.—Where there is a fraudulent concealment of a cause of action then existing, made in response to inquiry, when inquiry is a duty, the statute of limitations will not run, nor begin to run until actual knowledge: Ferris v. Henderson, 12 Pa. 49; Pennock v. Freeman, 1 Watts, 410; Hughes v. Bank, 110 Pa. 428; Morgan v. Tener, 83 Pa. 305.

*Roger Sherman*, for appellee.—The court had power to reverse the referee: Act of May 4, 1889, P. L. 81; Marr v. Marr, 103 Pa. 463; Van Syckle v. Stewart, 77 Pa. 124; Wallingford v. Dunlap, 14 Pa. 31; Butterfield v. Lathrop, 7 Pa. 225.

Hawkins was an attorney in fact, for he was an agent for the

transaction of an act specified in a sealed instrument, called a letter or power of attorney: Anderson and Bouvier's Law Dictionaries.

If, when a man has been put in charge of land by the owner and directed, by parol, to make a sale of it, and has done so by parol, he is to be held guilty of a "constructive fraud" because he had no written authority, then men are daily committing crimes and incurring responsibilities which the courts have so far failed to punish or enforce. On the contrary, the courts have recognized these usual methods of men's business and the manner of proof necessary to sustain the transactions, in the following cases: Grayson v. Bannon, 8 Watts, 524; McDowell v. Simpson, 3 Watts, 135; Gilpin v. Howell, 5 Pa. 51.

A constructive fraud can exist only where some act has been committed contrary to public policy, where there is a peculiar or confidential relation between the contracting parties, or where a contract is made between two persons for the purpose of, or with the effect to injure or defraud a third person : Moens v. Hayworth, 10 M. & W. 147; Kerr on Fraud and Mistake, 56; 1 Story's Eq. Jur. § 256.

The statute of limitations begins to run from the commission of the act complained of, where that act only amounts in law to a constructive fraud: Zacharias v. Zacharias, 23 Pa. 452; Musselman v. Eshleman, 10 Pa. 394; Hollinshead's Ap., 103 Pa. 158.

The objection to the competency of defendant as a witness must necessarily be based upon the ground that the contract with plaintiff is Mackey's contract. If it is, plaintiff cannot recover. He brings his action upon the ground that it is not Mackey's contract. If it is not, Mackey's heirs or legal representatives have no interest in this suit, direct or remote.

Opinion by Mr. Justice Mitchell, July 12, 1894:

The referee found only a constructive fraud by the defendant, and the action was therefore barred by the statute of limitations which in such cases begins to run from the date of the act committed. Hollinshead's Appeal, 103 Pa. 158, 165.

But the learned judge below was entirely right in holding that there was no sufficient evidence of fraud at all. The plaintiff's whole cause of action hinges on the narrow question

of fact whether defendant represented that he had a "power of attorney" or merely an "authority" to sell. If the latter then there was no fraud, for it is clear that he had verbal authority and that his arrangement with plaintiff was ratified by Mackey. But even if the defendant represented that he had a power, or a warrant of attorney, the weight of the evidence is that plaintiff knew the whole situation and was not in any way deceived. Defendant had a written letter of attorney from Mackey, duly recorded, giving him authority to lease and manage the property, collect the rents, etc., but not extending to a power to sell, and plaintiff himself testified that defendant told him "he had no power of attorney to sell" but was going to Philadelphia to see Mackey, and subsequently said "he had got it fixed all right." As well and tersely stated by the learned judge below, "we have the undisputed fact that Davis knew it was Mackey's land, and also knew that Hawkins's power of attorney did not authorize him to sell and convey land, and when Hawkins told him Mackey authorized him to sell it, and produced no written authority, the inference is irresistible that Davis knew Hawkins's authority was by parol." The whole evidence shows that the transaction was conducted in a loose and informal way. By the contract as set forth in the receipt for the first payment, the rest of the purchase money was to be paid at stipulated times and amounts, the last being three hundred and fifty dollars due July 1, 1878. There is no pretence that these terms were complied with by plaintiff. On the contrary his payments were irregular both as to time and as to amount, and the last one was never made in full at all, though nearly twelve years elapsed between the time it was due and the bringing of this suit. In the meantime Mackey had died, and his heirs for a time at least disclaimed any interest in the land. The whole matter was allowed to run on at the loosest possible ends. Whatever may be the rights of Mackey's heirs or representatives to an account from defendant for the money paid him by plaintiff, it is entirely clear that there was no such fraud on the latter as prevented the running of the statute of limitations against his claim, even as to money paid after Mackey's death, when defendant's authority, whatever it was, had expired.

The defendant was an entirely competent witness. The

thing in controversy was a transaction between the parties, both living. Mackey's representatives were not parties or privies to the action, and would not be affected in any way by the result of it.

Judgment affirmed.