## Lakeside Forge Co. *v.* Freedom Oil Works Co., Appellant.

*Contract—Rescission— Words and phrases — "A car or two"— Good faith—Warranty—Essence of contract—Fraud—Damage or injury.*

1. Where a purchaser of a supply of oil for a year to be delivered in monthly installments on orders, stipulates that he will not give the first order until he has used up "a car or two coming from another source," and the seller agrees that the shipments are "to begin after you have taken out what oil is yet due you on previous contract," the seller cannot, after the purchaser delays for two months before sending his first order, and after the price of oil has risen, rescind the contract because the purchaser used seven cars coming to him from other sources. The general expression "a car or two" signifies an indefinite small number and may include as many as seven.

2. Where indefinite words are used and the naming of a small quantity is regarded not as in the nature of a warranty but only as an estimate of the probable amount, good faith is all that is required of the party making it.

3. To justify the rescission of a contract because of falsehood, it must have been relied upon by the complaining party to his detriment.

Argued October 3, 1919. Appeal, No. 122, Oct. T., 1919, by defendant, from judgment of C. P. Beaver Co., March T., 1917, No. 155, on verdict for plaintiff in case of Lakeside Forge Co. v. Freedom Oil Works Co. Before STEWART, MOSCHZISKER, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Assumpsit for breach of contract. Before BALDWIN, P. J.

At the trial the court gave binding instructions for plaintiff.

Verdict and judgment for plaintiff for $4,621.93. Defendant appealed.

*Error assigned* was in giving binding instructions for plaintiff.

*F. G. Moorhead,* with him *J. Norman Martin* and *John G. Marshall,* for appellant, cited: Sternbergh v. Brock, 225 Pa. 279; Lake v. Weber, 6 Pa. Superior Ct. 42; Braunschweiger v. Waits, 179 Pa. 47; McKeever v. Canonsburg Iron Co., 138 Pa. 184.

*C. R. May,* of *Hice, Morrison, Reader & May,* for appellee, cited: Swift & Co. v. Hafleigh & Co., 66 Pa. Superior Ct. 504; Ming v. Woolfolk, 116 U. S. 599; Devers v. Sollenberger, 25 Pa. Superior Ct. 64.

OPINION BY MR. JUSTICE WALLING, January 5, 1920:

This is an action for breach of contract. Plaintiff is a forge company at Erie and defendant is an oil refining company at Freedom, Beaver County. The contract was made in 1915 by correspondence as follows (we omit parts not here material). On August 6th, plaintiff wrote defendant: "Would you be willing to contract for our requirements in fuel oil for the coming year commencing about September 1st? We use about 15,000

gallons per month and order one tank car of about 8,000 gallons at a time. State gravity, and price f. o. b. Erie per gallon." August 9th defendant answered, "Replying to your letter of August 6th covering your requirements for fuel oil during the next twelve months beginning September 1st. While we feel that this is an inopportune time to make contract based on the prices that prevail at the present time, we would make you a price covering your requirements hoping that you could possibly see your way clear to let us figure with you on your lubricating oil and grease requirements that you undoubtedly require. We are, therefore, quoting you a price of 3 cents per gallon delivered at Erie, Pa., in tank cars covering a quantity of 15 to 18 thousand gallons per month as your requirements may be and for a period of twelve months." August 16th plaintiff replied, "We have your favor of the 9th inst. quoting us 3 cents per gallon on Pennsylvania fuel oil delivered f. o. b. Erie in tank cars and have decided to accept your proposition. You will find enclosed an order covering same, and would ask that you kindly acknowledge receipt. Do not ship any oil on this order until we specify on same. We have a car or two coming from another source and just as soon as this is used up, we will commence on your order, ordering in such quantities and at such times as will fill our requirements. Our plant is increased and some months we use 14,000 gallons, some months 18,000 gallons, according to the number of hammers we are running. Our shop is overburdened with work at the present time, and, therefore, you may expect to receive specifications on this order in the neighborhood of 16,000 gallons per month." August 17th defendant answered: "We have your letter of August 16th, also your order 6542 covering your requirements of fuel oil for the twelve months beginning August 16th, 1915, and complying with your request we have entered your order for shipment as you may require from time

to time, the shipments to begin after you have taken out what oil is yet due you on previous contract. We will be glad to arrange shipment as you may direct and for such quantities as you may require each month. In view of the fact that there has been considerable advance in the price of crude oil, you can figure that you have been very fortunate in making contract for your requirements for this grade of oil at this time, as we would not consider making a price now other than on a basis of 3¾ cents delivered Erie." This was followed by another letter from defendant, dated September 22, 1915, which says, "Referring to your letter of August 16, and your order No. 6542, for fuel oil requirements covering a period of twelve months from August 16, 1915, to August 16, 1916, we would ask you to kindly consider that we will under no circumstances supply you a greater quantity of fuel oil than that which you have specified in your letter of August 16th, as you are no doubt aware that we made you a price that we considered low at that time, and which based on present market conditions is just about one cent per gallon lower than you could buy it from any other refiner at this time. In fact, we doubt whether you could make contract and taking this into consideration we feel that you ought to consider making your purchases of lubricating oils and greases that you undoubtedly require from those who are supplying you fuel oil and which as stated will be supplied to you during the next year at a considerable loss, for every gallon that we may be required to ship to you." On November 15, 1915, plaintiff by letter called upon defendant for a car of the fuel oil and two days later defendant replied refusing to deliver it, alleging that plaintiff's delay had operated as a cancellation of the contract, and averring that plaintiff must have used oil secured from other sources in addition to the amount on hand. As a matter of fact plaintiff had seven cars of fuel oil coming on a former contract when the one in suit was made and that was the oil it had used from August to November,

1915. The statement that it had a car or two coming was made honestly but without investigation. The parties had further correspondence and telephone conversations in which plaintiff insisted that defendant perform the contract, which the latter refused to do. Plaintiff supplied its requirements for the balance of the year to August, 1916, from other parties, at the market price, and then brought this suit for the difference between that and the contract price. The court directed a verdict for plaintiff, and from judgment entered thereon defendant brought this appeal.

Appellant's position is untenable. The agreement is plain and obligated defendant to supply plaintiff's requirements of fuel oil for one year, less the amount due on a prior order; until that was exhausted plaintiff could not demand oil on the contract in suit; hence, defendant was not released because plaintiff failed to make a premature demand. Neither regarded the amount so due as the essence of the contract nor attempted to fix it definitely. Plaintiff says "a car or two," and defendant says "to begin after you have taken out what is yet due you on previous contract." Either might have insisted on having that amount stated definitely, but both were content to leave it open; under such circumstances, in absence of bad faith, neither can complain. We agree with the trial judge that the general expression, "a car or two" signifies an indefinite small number and may include as many as seven. In that respect the expression is similar to "a few." It must be construed with reference to the circumstances and subject-matter, and is not necessarily confined to one or two. It is like the words "in a day or two," which are not limited to to-morrow or the next day. The contract was somewhat flexible as to the amount due on the prior order, the extent of plaintiff's requirements and the time of delivery; but its obligations are not the less binding upon the parties. Where indefinite words are used and the naming of the quantity is regarded not as in the nature

of a warranty, but only as an estimate of the probable amount, good faith is all that is required of the party making it: Brawley v. United States, 96 U. S. 168; see also Marx v. American Malting Co., 169 Fed. 582.

Defendant made no complaint at plaintiff's delay in ordering the oil, in fact defendant's letter of September 22d seeks to limit the amount it must furnish under the contract, and states the real truth that each gallon so furnished would be at a considerable loss. But defendant is not released from all liability for the year because by a fortuitous circumstance it was saved harmless for the first two months. This suggests another fatal defect in appellant's case—to justify the rescission of a contract because of falsehood it must have been relied upon by the complaining party to his detriment. "As in an action for deceit, so also in order to avoid a contract for false representations, it is essential that the party complaining shall have been prejudiced or injured by the fraud, but it is not necessary that the damage or prejudice be monetary": 13 C. J. p. 393, sec. 302; see also 9 Cyc. 431; 35 Cyc. 67. Here there was no damage or prejudice, monetary or otherwise. To afford ground for relief the party must have been misled to his injury by the false statement: Devers v. Sollenberger, 25 Pa. Superior Ct. 64; see also Williams v. Kerr, 152 Pa. 560; Black on Rescission and Cancellation, vol. 1, p. 309, sec. 112; Ming v. Woolfolk, 116 U. S. 599, 602. An innocent misstatement resulting in no damage or inconvenience to the adverse party will not justify the rescission of a contract. Here, the false statement, if such it can be called, resulted in a positive advantage to defendant of hundreds of dollars; so the defense is without merit in law or equity.

The assignments of error are overruled and the judgment is affirmed.