## Wilson, Appellant, v. Galena-Signal Oil Co.

*Contract—Substitution of new contract for old—Change from commissions to salary — Misrepresentations — Fraud — Inducing cause.*

1. An intention tó deceive and a false statement, even on a material point, will not overthrow a contract unless the statement was the means of producing it.

2. Where a salesman agrees to substitute a salary contract for a commission contract, and claims that he was induced to do so by certain alleged misrepresentations made to him, he cannot, after a breach of the salary contract, recover on the commission contract, where the evidence is conclusive that the inducing cause for the new contract was not the representations made to him.

Argued September 29, 1922. Appeal, No. 113, Oct. T., 1922, by plaintiff, from judgment of C. P. Venango Co., April T., 1920, No. 10, on verdict for defendant in case of John A. Wilson v. Galena-Signal Oil Co. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for commissions. Before CRISWELL, P. J. The opinion of the Supreme Court states the facts.

Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned,* inter alia, was binding instructions for defendant, quoting them.

*E. C. Breene,* with him *E. W. Criswell* and *John L. Nesbit,* for appellant.—Where a party has been induced by fraud to change a contract, upon discovery of the fraud, he can sue on the original contract: Erie City Iron Works v. Barber, 106 Pa. 125; Max Meadows Land & Imp. Co. v. Mendinhall, 4 Pa. Superior Ct. 398; Braunschweiger v. Waits, 179 Pa. 47.

*Thomas Patterson,* of *Patterson, Crawford, Miller & Arensberg,* with him *J. S. Carmichael* and *Crawford & Harris,* for appellee, cited: Smith v. Blachley, 198 Pa. 173; Dalzell v. Lewis, 252 Pa. 283.

Opinion by Mr. Justice Schaffer, January 3, 1923:

The trial judge directed a verdict in this case for defendant; plaintiff has appealed.

The action was assumpsit to recover the amount alleged to be due on a contract to pay plaintiff certain commissions on sales of oil. The contract was by word of mouth and was entered into by plaintiff and Charles Miller, acting for two limited partnerships. Subsequently the form of organization of the limited partnerships was changed to corporations and these were thereafter merged into the defendant. Following the change in the form of organization, the corporations continued to act upon the contract as made by the limited partnerships and to pay the plaintiff commissions on the oil sold, until 1912, when the occurrence took place which resulted in this suit.

About the year 1911, the Standard Oil Company, which was a large owner of the stock of defendant, was dissolved. In March, 1912, Miller, who was an officer of defendant authorized to act for it, told plaintiff, according to his version of what took place at an interview between them, that defendant had received word from Washington that it would have to stop paying commissions on the sale of oil, that it was necessary to change their contract and thereafter they would pay him $1,000 per month in lieu of commissions (which amounted to a much larger sum) so long as appellee retained the business of a certain railroad, and, if it lost this customer, then it would pay him $5,000 a year for life; that relying upon the truth of Miller's statement, appellant entered into this new arrangement and received the payment of $1,000 per month until March, 1919, when he was notified by defendant that their re-

lations were at an end. On receipt of this notice, plaintiff made claim upon defendant for commissions under the old arrangement from 1912, when their payment to him had ceased. Some time after asserting this claim, appellant learned from an acquaintance that the company had continued to pay commissions to others after 1912, and, upon inquiry, ascertained that the statement made to him by Miller as to the notice from Washington about not paying commissions was false.

Plaintiff then brought this action against defendant, setting up as the basis thereof the original contract with the limited partnerships, its ratification by the succeeding corporations, and his acquiescence in its abrogation as the result of the false representation by Miller. He sought to recover commissions on all oils sold by defendant on contracts made by him from March 1, 1912, to the time of suit brought, a period of more than seven years, less the payments of $1,000 per month he had received; the aggregate of his claim, less credits, was $116,000.

On the trial, the court gave binding instructions for defendant, basing its legal conclusion mainly on the ground that, as more than seven years had intervened between the perpetration of the alleged fraud by Miller and the commencement of suit, plaintiff's right to recover was barred by the statute of limitations. Appellant admits he made no inquiry during the seven years as to the truth of the representation, and concedes that unless he relied on it there can be no recovery. He excuses his failure to earlier investigate the truth of what he was told by the friendly relations between himself and Miller. In this connection, it may be pertinent to observe that immediately after the conversation with Miller, plaintiff spoke to the treasurer of defendant about the alleged order from Washington, who replied that he had not heard of it. It may also be worthy of note that Miller never mentioned the order to plaintiff again, nor did plaintiff speak of it to him or anyone else during the

seven years. We, however, think it unnecessary to pass upon the question ruled by the court below,—the bar of the statute, for another reason which will now be stated, is controlling, in our view, against appellant's right to recover.

The position of plaintiff is that the commissions are due him under the original contract, because of the breach of the later agreement to pay him the salary of $1,000 per month; had the latter contract not been breached, there would have been no claim under the former one. It is a little difficult to follow his line of reasoning in this respect, in the light of his own testimony. He was a lawyer, and testified he knew no order of any kind could affect commissions which had been agreed to prior to the order, and that he told Miller so. With this knowledge, when he entered into the new arrangement, how could it be said that Miller's misrepresentation caused him to relinquish his old contract and enter into the new one? Knowing what he did, his reason for entering into the new contract could not have been because of the misrepresentation.

It would seem that the claim now made, that the falsehood as to the order from Washington invalidated the contract for salary and entitled him to recover commissions on the original contract, is a second thought on the subject, because, before he learned there was no order prohibiting the payment of commissions, and after he knew defendant was not going to continue his salary, he had reached the conclusion that all the commissions, which would have accrued to him had he not made the salary contract, were due him as a result of its breach, and asserted such a claim to the defendant by letter. It is manifest that on his own mental stage the falsity of Miller's statement at that time played no part. When he had the conversation with Miller, we have appellant, knowing and asserting that the order could not affect his contract; so knowing and asserting, he entered into

the new arrangement and cannot now be heard to say that he was misled or defrauded into making it.

It was held in Mahaffey v. Ferguson, 156 Pa. 156, that where a purchaser of standing timber goes upon the land and has an opportunity to see the timber, he will not be permitted to defend an action for the purchase money on the ground that he was deceived by the vendor's misrepresentation of the quality and quantity of the timber.

The misrepresentation of Miller, in the light of plaintiff's own knowledge, could not have been the material thing on which he relied in agreeing to rescind the old and enter into the new contract. We said in Lakeside Forge Co. v. Freedom Oil Works Co., 265 Pa. 528, 533: "To justify the rescission of a contract because of falsehood it must have been relied upon by the complaining party to his detriment"; in Sulkin v. Gilbert, 218 Pa. 255, 260: "It is just as essential that it should appear that the party complaining relied upon the representation, and that but for it he would not have made the contract, as it is that the fact of misrepresentation be established"; in Ackman v. Jaster, 179 Pa. 463, 465: "The weight of modern authority preponderates in favor of the principle that an intention to deceive, and a false statement even on a material point, will not overthrow the bargain unless the statement was the means of producing it"; and in Davis v. Hawkins, 163 Pa. 228, 232: "The plaintiff's whole cause of action hinges on the narrow question of fact whether defendant represented that he had a 'power of attorney' or merely an 'authority' to sell......But even if the defendant represented that he had a power, or a warrant of attorney, the weight of the evidence is that plaintiff knew the whole situation and was not in any way deceived." The principle which controlled the decision of these cases is operative on the one in hand.

The conclusion from plaintiff's testimony must be that the inducing cause to the new contract was not Miller's alleged misrepresentation, but the fact, which plaintiff

himself admits, that he "thought it [the new contract] was a fair proposition"; so determining, when such new contract was breached, he could not repudiate it and recover on the original contract.

The judgment is affirmed.